**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAKIESHA SANDERS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SHOE CARNIVAL, INC.,<br><br>Defendant. | CIVIL ACTION – CLASS ACTION<br><br>Civil Action No. 2:26-cv-2186-GAM |

**PLAINTIFF'S OPPOSITION TO DEFENDANT SHOE CARNIVAL, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. Plaintiff plausibly alleges a violation of WESCA. ..... 5

1. The "contents" of Plaintiff's communications with the Website were intercepted. ..... 5

2. Plaintiff sufficiently alleges that Defendant intercepted her communications. ..... 9

3. Plaintiff did not consent to the interception. ..... 11

B. Plaintiff plausibly alleges breach of contract ..... 12

1. Plaintiff alleges the material terms of the contract ..... 13

2. Plaintiff alleges that Defendant breached its promises ..... 14

3. Plaintiff sufficiently alleges cognizable damages. ..... 17

C. Plaintiff alleges that Defendant's intrusion was highly offensive ..... 18

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Cases**

*Adair v. Cigna Corp. Servs., LLC*,
No. CV 25-2384, 2026 WL 295744 (E.D. Pa. Feb. 4, 2026)........ 19

*Alhadeff v. Experian Info. Sols., Inc.*,
541 F. Supp. 3d 1041 (C.D. Cal. 2021) ........ 7

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*,
584 F.3d 575 (3d Cir. 2009)........ 13

*Aronson v. Sprint Spectrum, L.P.*,
767 A.2d 564 (Pa. Super. Ct. 2001)........ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 10

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)........ 9

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........ 7

*Commc'ns Supply Corp. v. Iron Bow Techs., LLC*,
529 F. Supp. 3d 423 (W.D. Pa. 2021)........ 12

*Commonwealth v. Shreffler*,
201 A.3d 757 (Pa. Super. Ct. 2018)........ 5

*Commonwealth v. Spangler*,
809 A.2d 234 (Pa. 2002)........ 5

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d. Cir. 2025)........ 6, 10

*Cook v. GameStop, Inc.*,
689 F.Supp.3d 58 (W.D. Pa. 2023) ........ 6, 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 11

*EuroOptic Ltd. v. W.L. Gore & Assocs., Inc.*,
781 F. Supp. 3d 320 (M.D. Pa. 2025)........ 13

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) .......... 11

*Hickey v. University of Pittsburgh*,
81 F.4th 301 (3d Cir. 2023) .......... 17

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 20

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 6, 19, 20

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 18, 19

*In re Rutter's Inc. Data Sec. Breach Litig.*,
511 F. Supp. 3d 514 (M.D. Pa. 2021) .......... 12

*In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*,
613 F.Supp.3d 1284 (S.D. Cal. 2020) .......... 17

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 7, 11

*Ingrao v. AddShoppers*,
No. 24-1022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) .......... 10

*J.K. Willison, Jr. v. Consol Coal Co.*,
637 A.2d 979 (Pa. 1994) .......... 16

*LJL Transp., Inc. v. Pilot Air Freight Corp.*,
962 A.2d 639 (Pa. 2009) .......... 16

*Menkes v. Prudential Ins. Co. of Am.*,
762 F.3d 285 (3d Cir. 2014) .......... 4

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. CV 22-4674, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) .......... 17, 18

*O'Donnell v. United States*,
891 F.2d 1079 (3d Cir. 1989) .......... 18

*Oliver v. Noom*, Inc.,
No. 2:22-CV-1857, 2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) .......... 8

*Opris v. Sincera Reprod. Med.*,
No. CV 21-3072, 2022 WL 1639417 (E.D. Pa. May 24, 2022) .............................................. 17

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
967 F.3d 218 (3d Cir. 2020)......................................................................................................... 4

*Podraza v. Nourish, Inc.*,
No. 25-cv-50356, 2026 WL 1078554 (N.D. Ill. Apr. 20, 2026) ................................................. 9

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022)................................................................................................. 5, 11

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) ............................................................................ 8, 11, 19

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)...................................... 7

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........................................................................................ 7

*Steuart v. McChesney*,
444 A.2d 659 (Pa. 1982)............................................................................................................ 16

*Thorsen v. Iron and Glass Bank*,
476 A.2d 928 (Pa. Super. Ct. 1984)........................................................................................... 18

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)................................................................................... 7, 9

**<u>Statutes</u>**

18 Pa. C.S. § 5701.............................................................................................................. 1, 4

18 Pa. C.S. § 5702.............................................................................................................. 5, 9

18 Pa. C.S. § 5704(4) ............................................................................................................. 11

18 Pa. C.S. § 5725(a) ................................................................................................................ 9

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 4, 9

## I. INTRODUCTION

Plaintiff Lakiesha Sanders ("Plaintiff") brings this class action against Defendant Shoe Carnival, Inc. ("Defendant" or "Shoe Carnival") for procuring third parties to deliberately intercept and record the electronic communications of visitors to its website, www.shoecarnival.com (the "Website"), in violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. C.S. §§ 5701, *et seq.*, and in breach of its own contractual promises to its customers. Defendant utilizes multiple tracking technologies on its Website to track and target website visitors for advertising purposes. Plaintiff alleges that Defendant went beyond merely embedding covert tracking code on its Website: it also continued to allow the interception of Plaintiff's and other visitors' communications even *after* they expressly withheld their consent.

When visitors arrived on Defendant's Website, Defendant presented them with a pop-up cookie banner and a straightforward choice: accept tracking or decline it. Shoe Carnival's cookie banner promised that visitors could "exercise [their] privacy rights" and instruct it not to "sell or share [their] personal data[.]" Compl. ¶¶ 41–42. Visitors who declined consent reasonably believed that their communications with Shoe Carnival would remain private. But Defendant ignored their choice entirely. Instead, Shoe Carnival procured at least two third-party vendors—FullStory, Inc. ("FullStory") and TikTok—to embed JavaScript tracking code on the Website. The code surreptitiously intercepted and recorded visitors' electronic communications in real time, transmitting that data to third parties in direct violation of Shoe Carnival's promises. Compl. ¶¶ 2, 3–4, 63. This was not accidental. Shoe Carnival acted intentionally in deploying the code, making affirmative representations to visitors about their ability to control data collection, and then disregarding those representations to serve its own commercial interests.

Shoe Carnival now moves to dismiss, arguing that Plaintiff's well-pled allegations are insufficient to support her claims. *See generally* Def.'s Mot.[1] But Plaintiff has alleged *precisely* what WESCA prohibits—the intentional interception of electronic communications by a party who procured third-party actors to conduct that interception without Website visitors' consent. Plaintiff has likewise stated claims for breach of contract and intrusion upon seclusion. Plaintiff has plausibly alleged that Shoe Carnival's own cookie banner constituted an enforceable promise not to share visitors' data—a promise that it proceeded to breach. Further, Shoe Carnival's disregard of its own promises was highly offensive pursuant to binding Third Circuit precedent. Plaintiff therefore respectfully asks the Court to deny Defendant's Motion to Dismiss in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff is a Pennsylvania resident who visited Shoe Carnival's Website, www.shoecarnival.com, while in Pennsylvania to browse the company's products. Compl. ¶¶ 9, 52. Unbeknownst to Plaintiff, Shoe Carnival had embedded snippets of third-party JavaScript code on its Website (the "Code"), supplied by at least two third-party vendors (FullStory and TikTok). Compl. ¶¶ 2–3. The Code was not a passive analytics tool, but instead instantaneously intercepted every interaction she had with the Website, as well as pages viewed, URLs of web pages visited, browser information, IP address, device's make, model, and operating system, demographic information, text entries into form fields, keystrokes (what was typed), movements, scrolling, network requests, clicks (including what was clicked on), and moments of inactivity("Website Communications"). Compl. ¶¶ 2, 15–19, 26–34. Additionally, TikTok assigns

[1] Defendant's Motion to Dismiss, Dkt. No. 20, is cited herein as "Def.'s Mot." Defendant's Memorandum of Law in Support of its Motion to Dismiss, Dkt. No. 20-1, is cited herein as "Def.'s Mem."

each Website visitor with a unique ID for purposes of tracking them across multiple platforms and linking that consumer profile to their TikTok account, if they have one. *Id.* ¶¶ 28-30.

The Website Communications were transmitted to FullStory and TikTok for advertising purposes and financial gain. Compl. ¶¶ 7, 25, 30. This interception of Plaintiff's communications occurred despite Plaintiff's explicit denial of consent. When Plaintiff arrived at the Website, Shoe Carnival presented her with a pop-up cookie consent banner. Compl. ¶ 41. The banner acknowledged that the Website "process[es] your personal information" but that visitors could "exercise [their] privacy rights" by selecting the "Cookie Settings" option, ostensibly giving visitors the choice to disable "Performance" and "Targeting" cookies. Compl. ¶¶ 41–43. The pop-up insisted that by managing these settings, visitors could instruct Shoe Carnival to "not sell or share [their] personal data" *Id.* at ¶ 42.

Plaintiff took Shoe Carnival at its word and selected the "Cookie Settings" option. She affirmatively turned off "Performance Cookies" and "Targeting Cookies." Compl. ¶ 52. Plaintiff made this choice deliberately, as she did not consent to her Website Communications being shared with third parties, and communicated this to Defendant in the exact manner that Defendant had invited her to do so. *Id.* at ¶ 64. Shoe Carnival, however, did not honor her choice or its own representations. Despite Plaintiff's express rejection and Defendant's representations that her data would not be shared or sold, the Code continued to intercept the contents of Plaintiff's communications and transmit them to FullStory and TikTok for advertising purposes and monetary gain. Compl. ¶¶ 25, 56–57. And the consequences were immediate: after leaving the Website, Plaintiff began receiving advertisements for Shoe Carnival on her Facebook account, and these advertisements specifically highlighted products similar to those that Plaintiff browsed on the Website. Compl. ¶ 54.

Plaintiff and the proposed Class never gave prior consent to Defendant's interception of their Website Communications. In fact, Plaintiff explicitly did *not* consent to the interception of her Website Communications. She affirmatively chose to opt out of tracking through Shoe Carnival's cookie banner. Compl. ¶¶ 52, 67. Ignoring Plaintiff's explicit denial of consent, Defendant continued to allow third parties to track her even though it promised that it would "not sell or share [her] personal data." Compl. ¶ 42. Seeking to vindicate her own privacy rights and those of all other Pennsylvania citizens similarly harmed, Plaintiff filed her Class Action Complaint in the Court of Common Pleas for Philadelphia County, alleging that Defendant's actions constitute a violation of WESCA, 18 Pa. C.S. §§ 5701, *et seq.*, constitute common law intrusion upon seclusion, and constitute breach of contract. Compl. ¶¶ 72, 89–94, 100–05, 112–15. Defendant removed Plaintiff's Complaint to this Court and now moves to dismiss under Rule 12(b)(6), arguing that Plaintiff fails to state a single claim on the merits. *See* Def.'s Mot. at 1.

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 289–90 (3d Cir. 2014). "A complaint has facial plausibility when there is enough factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 290 (internal citations and quotations omitted). In ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw "all reasonable inferences in the plaintiff's favor." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 229 (3d Cir. 2020).

## IV. ARGUMENT

### A. Plaintiff plausibly alleges a violation of WESCA.

WESCA "emphasizes the protection of privacy," *Commonwealth v. Spangler*, 809 A.2d 234, 237 (Pa. 2002), and "is to be strictly construed to protect individual privacy rights." *Commonwealth v. Shreffler*, 201 A.3d 757, 764 (Pa. Super. Ct. 2018). "Consistent with that emphasis, [WESCA] applies when anyone intercepts communications—that is, takes an action to acquire them with a device. And it requires all parties—not just *a* party—to consent to that interception." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 133 (3d Cir. 2022) ("*Popa II*"). Defendant asserts that Plaintiff's WESCA claim fails because "(i) she fails to plead that the 'contents' of any communication are at issue, (ii) she fails to plead that there was any interception at all with regard to her interaction with the Website, and (iii) she fails to plead that any of categories of data she identifies were collected without her consent." Def.'s Mem. 1; *see also* Def.'s Mem. 4–5. These arguments lack merit, misrepresent the law, and ignore Plaintiff's well-pled allegations.

#### *1. The "contents" of Plaintiff's communications with the Website were intercepted.*

Despite WESCA broadly defining "contents" to include a wide array of information, Shoe Carnival contends that the communications intercepted by the Code embedded on its Website do not constitute "contents" under the statute. Def.'s Mem. 5. On the contrary, courts within and outside the Third Circuit have repeatedly found that the categories of information intercepted by the Code procured and deployed by Defendant are "contents" under the statute.

WESCA broadly defines "contents" as "*any* information concerning the substance, purport, or meaning" of a communication. 18 Pa. C.S. § 5702 (emphasis added). Shoe Carnival claims that the information intercepted from Plaintiff and the Class (including, *inter alia*, page

views, products clicked on, text typed, URLs of web pages visited, browser information, IP addresses, demographic information, form submissions, *etc*.) was "record information alone—[and is] not an intended message conveyed by the communication[.]" Def.'s Mem. 5. Shoe Carnival principally relies on *Cook v. GameStop, Inc.*, 689 F.Supp.3d 58 (W.D. Pa. 2023) ("*GameStop I*") for this proposition. The Third Circuit affirmed dismissal of the plaintiff's WESCA claim in *GameStop I* on Article III standing grounds only and did not endorse the lower court's analysis of the sufficiency of the pleadings, which was merely dicta in the first instance because the district court did not have jurisdiction to reach the merits of the claim. *GameStop I*'s "contents" analysis is not binding on this Court. *See generally Cook v. GameStop, Inc.*, 148 F.4th 153 (3d. Cir. 2025) ("*GameStop II*").

Nor is the *GameStop I* court's discussion of contents persuasive authority. On the contrary, the Third Circuit has held that "[i]f an address, phone number, or URL is instead part of the substantive information conveyed to the recipient, then by definition it is 'content.'" *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("*Google Cookie Litig.*"). Indeed, "[t]he line between contents and metadata is not abstract but contextual with respect to each communication." *Id.* In reaching its decision in *Google Cookie Litig.*, the Third Circuit found "that routing information and content are not mutually exclusive categories. And between the information revealed by highly detailed URLs . . . we are persuaded that—at a minimum—some queried URLs qualify as content." *Google Cookie Litig.*, 806 F.3d at 138–39.

Consequently, this Court should find that Plaintiff has sufficiently alleged that the *contents* of her communications were intercepted because she alleges the interception of even more categories of substantive transmissions than were at issue in *Google Cookie Litig*. Plaintiff alleges that the Code captured not only technical identifiers such as IP addresses and browser

characteristics, *but also* products viewed, pages and content clicked on and viewed, and her specific mouse movements, form and text submissions, and other browsing activity on product pages. Compl. ¶¶ 2, 16, 26, 63. This information constitutes the "contents" of Plaintiff's communications because it includes *everything* communicated between Defendant and Plaintiff during her visit. The third parties' receipt and understanding of Plaintiff's browsing communications and intentions while on Defendant's Website is further confirmed by their ability to use the intercepted communications to target Plaintiff on social media for advertisements tailored to the same types of products she was viewing on Defendant's Website, immediately after she had visited. Compl. ¶ 54.

These allegations go well beyond technical metadata and plainly constitute "contents" of a communication under WESCA, as numerous courts have found in analogous online wiretapping cases. *See*, *e.g.*, *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023) (denying defendant's motion to dismiss); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1361 (S.D. Cal. 2024) (same); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 894 (S.D. Cal. 2025) (same, applying federal wiretap act); *Alhadeff v. Experian Info. Sols., Inc.*, 541 F. Supp. 3d 1041, 1045 (C.D. Cal. 2021) (same); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) (same, applying California wiretap act); *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) (same).

Here, Plaintiff alleges that Defendant captured the specific content that she and other visitors input on the Website, including specifics about the products searched and viewed, the substance of their interactions with product pages, as well as browsing data that can identify each visitor and link them to other online accounts for marketing purposes. Compl. ¶¶ 2, 16, 19, 26–30, 59. An example of what content is captured during a typical website visit is contained in the

screenshot of Paragraph 33 of the Complaint: "if a Website visitor looks at Women's Nike Initiator Training Shoes, that information is captured immediately by TikTok." Compl. ¶ 33. That same Code was running during Plaintiff's visit, capturing the same type of content when she viewed Shoe Carnival's products. Compl. ¶¶ 21, 57, 63. The contents captured during her visit, alongside the unique identifiers that allowed the Code to link Plaintiff's searches with her social media account, allowed third parties to target and advertise similar products to Plaintiff. Compl. ¶ 54.

Ultimately, even if the Court harbors uncertainty about whether the captured categories of information here constitute "contents" under WESCA, that determination requires a fact-specific inquiry that is inappropriate at this stage. Evidentiary proof of precisely what FullStory and TikTok captured from Plaintiff's and Class members' sessions—including what was entered into form fields, what search queries were transmitted, and what subpage-level URL information was shared—will not be available to Plaintiff until discovery. *See Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 119 (W.D. Pa. 2019) ("*Popa I*") (refusing to rule on whether tracking technology captured "contents" of communications at pleading stage because the court would be "better equipped to do so after a record is developed"); *see also Oliver v. Noom*, Inc., No. 2:22-CV-1857, 2023 WL 8600576, at *7 (W.D. Pa. Aug. 22, 2023) ("determining whether such information is 'content' in this context will require a more developed factual record."). Plaintiff should therefore be afforded the opportunity to develop the factual record before the Court conclusively resolves any question about whether the tracking technologies at issue here capture "contents" under WESCA.

2. *Plaintiff sufficiently alleges that Defendant intercepted her communications.*

WESCA provides that "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication." 18 Pa. C.S. § 5725(a). "Intercept" is defined as "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." *Id.* § 5702. Courts across the country have held that the kind of code Shoe Carnival deployed on its Website "intercepts" communications. *See*, *e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1072 (N.D. Cal. 2021) (finding plaintiffs plausibly alleged "interception" under the federal wiretap act where Google code allowed Google to "learn exactly what content the user's browsing software was asking [a] website to display[.]"); *Zarif*, 789 F. Supp. 3d. at 894 (same, as to Facebook Pixel); *Podraza v. Nourish, Inc.*, No. 25-cv-50356, 2026 WL 1078554, at *8 (N.D. Ill. Apr. 20, 2026) (same, as to Google Pixel).

Shoe Carnival apparently concedes this point. Rather than denying that the Code intercepts Website visitors' communications and allows third parties to see them, Defendant argues that Plaintiff's WESCA claim should be dismissed because she supposedly does not claim that the Code intercepted *her* communication. *See* Def.'s Mem. 7. Indeed, Shoe Carnival claims that Plaintiff's allegations are "insufficient" because "allegations of what a technology is 'designed' to do along with formulaic recitations of elements is not enough[.]" Def.'s Mem. 8. Defendant argues that Plaintiff does not "allege the facts of what happened when [she] visited the website." *Id.* But this is deliberately obtuse and misstates the pleading requirements of Rule 12(b)(6).

Plaintiff has specifically alleged that (1) the Code intercepts users' communications; (2) Shoe Carnival embedded the Code on its Website; (3) the Code was active at the time of her visit to the Website; and (4) the Code captured her communications with the Website in violation of WESCA. *See*, *e.g.*, Compl. ¶¶ 4, 7, 21–22, 32–34. A claim has "facial plausibility" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). From the foregoing allegations, the Court can reasonably infer that the Code intercepted Plaintiff's communications.

Defendant again relies on *GameStop I* to support its contention that Plaintiff fails to state a WESCA claim, but once again, that decision is inapposite. On appeal, the Third Circuit found that the *GameStop I* court erred in dismissing the plaintiff's WESCA claim with prejudice, instead affirming dismissal only for lack of Article III standing. *GameStop II*, 148 F.4th at 163. Defendant has raised no challenge to Plaintiff's standing based on a supposed lack of facts specific to her experience, only the sufficiency of the pleadings. *GameStop I* and *II* lend Defendant no support on this point.

Shoe Carnival further relies on this Court's unreported decision in *Ingrao v. AddShoppers*, No. 24-1022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024). Unlike that case, Plaintiff has sufficiently alleged that Defendant "harnessed the capabilities she describes, and it had the result of capturing the contents of specific communications." *Id.* at *14 (citation omitted). The Complaint contains allegations and screenshots of *exactly* which communications the Code collects, even after users decline tracking. *See* Compl. ¶¶ 19–21, 31–34. To survive a motion to dismiss, "a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will

reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quotation marks omitted). Indeed, "standards of pleading are not the same as standards of proof." *Id.* at 214. The Court should therefore find that Plaintiff has sufficiently alleged that her communications were intercepted.

*3. Plaintiff did not consent to the interception.*

Plaintiff took affirmative steps to prevent Shoe Carnival from intercepting her communications by choosing not to "Accept Cookies" and disabling "Performance" and "Targeting" cookies. Compl. ¶¶ 41–46, 52. Defendant nonetheless contends that she consented to the interception. *See* Def.'s Mem. 9. WESCA requires that *all* parties to a communication must give *prior* consent to fall within the statute's "consent" exception. 18 Pa. C.S. § 5704(4); *see also Popa II*, 52 F.4th at 133. Plaintiff clearly did not. In fact, she affirmatively *withheld* consent. Compl. ¶ 52. This withholding, coupled with the fact that any disclosures that Shoe Carnival relies on are buried within subsequent cookie pop-ups that users must navigate to, is enough to support a reasonable inference that Plaintiff did not consent. *India Price*, 712 F. Supp. 3d at 1358–59.

Ultimately, consent is a fact-based determination that is not appropriate for resolution on the pleadings. *See Popa I*, 426 F. Supp. 3d at 119 (finding that whether privacy policy "provided actual notice or inquiry notice" constituted "important questions of fact"); *Doe v. Meta Platforms*, *Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (finding that whether Meta had consent under the federal Wiretap Act to collect users' healthcare information was an "evidence-bound determination[ ]" that was inappropriate to reach on a motion to dismiss). Plaintiff has alleged that she did not provide explicit consent because she chose to "opt out" of "Performance"

and "Targeting" cookies. This is sufficient to defeat Defendant's consent argument at the Rule 12 stage.

**B. Plaintiff plausibly alleges breach of contract.**

Under Pennsylvania law, a claim for breach of contract "is established by the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages." *Commc'ns Supply Corp. v. Iron Bow Techs., LLC*, 529 F. Supp. 3d 423, 431 (W.D. Pa. 2021) (citation omitted). Plaintiff plausibly alleges that Shoe Carnival offered Plaintiff and members of the putative class a chance to "opt out" of tracking and instruct Defendant not to "sell or share of [their] personal data." Compl. ¶ 42. Plaintiff also plausibly alleges that Shoe Carnival continued to sell or share her and other Website visitors' information with third parties despite the explicit promise not to. Compl. ¶¶ 46, 55, 112–13. As a result of Shoe Carnival's failure to honor Plaintiff's wishes, Plaintiff suffered damages. Compl. ¶ 109.

Ignoring Plaintiff's well-pleaded Complaint and the plain language of the offer Shoe Carnival extended in its cookie pop-up, Defendant asserts that Plaintiff's claim fails because there was no promise between the parties. Def.'s Mem. at 11. Plaintiff has alleged sufficient facts to support the finding that Defendant made an enforceable promise that it would honor her choice not to share her information with third parties. *See, e.g.*, *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 537 (M.D. Pa. 2021) (finding that defendant's express or implied assurances that it would not share plaintiffs' data was an enforceable promise). Defendant breached that promise, and Defendant's request to dismiss Plaintiff's breach of contract claim should be denied.

*1. Plaintiff alleges the material terms of the contract.*

"[I]n order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir. 2009) (citation omitted). In other words, courts look to see "the terms are sufficiently definite to be specifically enforced." *Id*. (citations omitted). An agreement is sufficiently definite and will not fail for vagueness if the parties intended to make a contract and the terms provide a reasonably certain basis for a court to give an appropriate remedy." *EuroOptic Ltd. v. W.L. Gore & Assocs., Inc.*, 781 F. Supp. 3d 320, 328 (M.D. Pa. 2025). But "[t]he fact that an agreement omits an essential term, such as price, 'does not vitiate contract formation if the parties otherwise manifested their mutual assent to the agreement and the terms of that agreement are sufficiently definite.'" *Id.* (citation omitted).

Plaintiff clearly alleges that Defendant offered her the ability to "exercise your privacy rights" by presenting a choice between different privacy settings that Defendant purportedly would honor during her use of Defendant's Website. Compl. ¶ 41. This included Defendant's offer to allow a visitor to "Manage Consent Preferences" and disable Performance Cookies and Targeting Cookies, which Defendant represented would mean that Defendant "will not know when you have visited our site," and "you will experience less targeted advertising." Compl. ¶¶ 42–43. Plaintiff clearly alleges that she accepted Defendant's offer by rejecting cookies "when Defendant presented her with the option." Compl. ¶¶ 52, 112.

Thus, to answer the question posed in Defendant's brief—"which representations?" Def.'s Mem. at 10—the representations that Defendant would honor Plaintiff's exercise of the option Defendant presented, to prevent the sharing of her browsing data with third parties.

Defendant's argument that the representations in the cookie banner are not the "sum total" of Shoe Carnival's representations on its Website, *id.*, is irrelevant. Plaintiff's only pleading burden in her Complaint is to identify the *material terms* which she contends Defendant has breached. She has done so. She is not required to include non-pertinent terms in her pleading.

2. *Plaintiff alleges that Defendant breached its promises.*

Plaintiff clearly alleges throughout her Complaint that Defendant breached its promise to disable unnecessary performance cookies and targeting cookies after Plaintiff accepted Defendant's offer to do so. Compl. ¶ 46 ("However, Defendant does not respect its Website users' choices to opt out of the use and disclosure of their data. Instead, Defendant enabled FullStory and TikTok to continue to collect, use, and analyze Website Communications even when users expressly told Defendant they did not consent to such tracking."); ¶¶ 52–57 (alleging that despite Plaintiff's rejection of Cookies, Defendant nevertheless allowed FullStory and TikTok to intercept her communications with Defendant's website); ¶ 67 ("When Plaintiff and Class Members chose to "Reject All" or configured their preferences to disallow certain categories of cookies, Defendant still allowed the Code Vendors to deploy the Code and capture Website Communications."); ¶¶ 112, 114 (alleging that despite Plaintiff's and Class Members' rejection of cookies in Defendant's cookie notice, Defendant disclosed Plaintiff's and Class Members' information to third parties).

Defendant gives two reasons why it believes these clear allegations do not sufficiently plead a breach of contract. First, Defendant claims that the Complaint "does not allege what data *was* collected from Plaintiff." Def.'s Mem. at 11. That is incorrect. At the beginning of Plaintiff's Complaint, she explains that the Session Replay Code on Defendant's Website "intercepted, stored, and recorded *everything* Plaintiff and the Class Members did on the Website," including

"what they searched for, what they looked at, the information they input, and what they clicked on for the entire duration of their visit." Compl. ¶ 4 (emphasis added). This is not a generic allegation about the capacity of Session Replay Code, as Defendant insinuates, but is instead a specific allegation that the *Code in operation* on Defendant's Website at the time of Plaintiff's visit in fact intercepted those categories of communications and transmitted them to FullStory.

To drive the point home with even more specificity, Plaintiff alleged that for *any* website with the embedded FullStory Script, "each click, tap, URL visit, and every other interaction is sent" to FullStory servers. Compl. ¶ 19. As to the TikTok Pixel, Plaintiff similarly alleges that it tracks website users' page views, button clicks, information inputted, and attaches a unique identifier. Compl. ¶ 26. Plaintiff alleges that the TikTok Pixel on Defendant's Website immediately intercepts the specific products that a website visitor views. Compl. ¶ 33. Plaintiff specifically alleged that she visited Defendant's Website and browsed for products, and that "the contents of her communications with the Website were intercepted by the Code, and simultaneously transmitted to FullStory and TikTok." Compl. ¶ 57. She further alleged that subsequent to her visit on Defendant's Website, she received targeted advertisements for Shoe Carnival on Facebook highlighting items similar to those she browsed on Defendant's Website. Compl. ¶ 54.

In sum, Plaintiff clearly alleged that the *entirety* of her communications with Defendant, including the specific products she viewed, were intercepted by FullStory and TikTok because Defendant failed to honor its promise to disable third-party tracking "tracking cookies" when Plaintiff chose that option.

Defendant further argues that Plaintiff failed to plead a breach because Defendant's cookie banner explains that some "Strictly Necessary" and "Functional" cookies are "always

active," and "there is no way to tell from the Complaint" whether Defendant considered FullStory Code and the TikTok Pixel to be within one of these categories. Def.'s Mem. at 12–13. But Defendant's subjective, undisclosed method of categorizing tracking software on its site is not relevant. This is a breach of contract claim, and the meaning of the terms in Defendant's cookie banner must be interpreted by this Court using the commonly accepted and plain meaning of the language used. *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009) (citing *J.K. Willison, Jr. v. Consol Coal Co.*, 637 A.2d 979, 982 (Pa. 1994); *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)). Defendant fails to develop any argument regarding the meaning of the various cookie categories and their descriptions, so at this stage the Court can simply reject Defendant's effort to establish ambiguity as to whether, under the terms of the cookie banner, FullStory Code and TikTok Pixel constituted "Strictly Necessary / Functional" cookies that Defendant did not offer to turn off, or were instead the types of "Performance" and "Targeting" cookies that Defendant offered, and Plaintiff accepted, to disable during the visit.

In any event, it is more than plausible that a reasonable website visitor would understand Defendant's banner to mean that by promising they could "exercise [their] privacy rights" and have a choice to disable "Performance" and "Targeting" cookies, Compl. ¶¶ 41–43, clicking those toggle buttons would in fact lead Defendant to honor the choice by *not* selling or sharing the visitor's personal communications with third parties. Indeed, that is exactly the meaning encouraged by Defendant's purported heading "Do Not Sell or Share My Personal Data," and its offer that "you can choose not to allow certain types of cookies," *id.* at ¶ 42, including "Targeting Cookies" that "may be used by [our advertising partners] to build a profile of your interests and show you relevant adverts on other sites." *Id.* at ¶ 43.

For the reasons above, Plaintiff's allegations plausibly state how Defendant breached its promise to honor Plaintiff's choice to disable the sharing of her personal browsing data with third party companies.

*3. Plaintiff sufficiently alleges cognizable damages.*

Defendant erroneously argues that Plaintiff has failed to plead cognizable damages. In Pennsylvania, however, damages are speculative "only if the uncertainty concerns the *fact* of damages, rather than the *amount*." *Hickey v. University of Pittsburgh*, 81 F.4th 301, 316 (3d Cir. 2023) (citations omitted) (emphasis in original). Here, Plaintiff has sufficiently alleged cognizable damages stemming from Defendant's breach of contract in the form of diminished economic value of her personal data, unconsented dissemination of her personal information to third parties (an affront to her privacy rights and dignitary interests), unwanted targeted advertising resulting directly from Defendant's breach, and that Defendant improperly profited through its sharing of Plaintiff's personal data in breach of its promises not to do so. Compl. ¶¶ 54, 105–08.

Courts recognize that such allegations give rise to cognizable damages that support a breach of contract claim. *See*, *e.g.*, *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. CV 22-4674, 2024 WL 4350328, at *5 (E.D. Pa. Sept. 30, 2024) (loss of value of information cognizable damages where healthcare provider impermissibly disseminated individuals' personal information to Meta (Facebook)); *Opris v. Sincera Reprod. Med.*, No. CV 21-3072, 2022 WL 1639417, at *8 (E.D. Pa. May 24, 2022) (collecting cases) (recognizing that "several courts have recognized the property value of personal information); *In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*, 613 F.Supp.3d 1284, 1297 (S.D. Cal. 2020) (concluding that "[t]he dissemination of one's personal information can satisfy the damages element of a breach of contract claim").

In any event, courts have found that "the actual value of damages is not for the Court to determine at a motion to dismiss stage." *Murphy*, 2024 WL 4350328, at *5. This is particularly true since Pennsylvania permits a plaintiff to recover nominal damages for a breach of contract. *See Thorsen v. Iron and Glass Bank*, 476 A.2d 928, 931 (Pa. Super. Ct. 1984) ("[i]f a plaintiff is able to prove a breach of contract but can show no damages flowing from the breach, the plaintiff is entitled to recover nominal damages."). The *fact* of damages is clear—Defendant breached a contract. The *amount* of Plaintiff's damage stemming from that breach, whether measured by the diminished value of her personal information, the value of that information to third-party retailers, or even nominal damages is not an issue the Court can or should reach at the pleading stage.

For these reasons, Plaintiff has sufficiently alleged damages, and together with her sufficient pleading of the other elements as explained above, she has adequately alleged a claim for breach of contract.

### C. Plaintiff alleges that Defendant's intrusion was highly offensive.

"[T]o state a cause of action for invasion of privacy under Pennsylvania law, [the plaintiff] must allege that there was an intentional intrusion on the seclusion of their private information, which was substantial and highly offensive to a reasonable person." *Aronson v. Sprint Spectrum, L.P.*, 767 A.2d 564, 568 (Pa. Super. Ct. 2001) (quotations omitted); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 293 (3d Cir. 2016). Plaintiff's allegations establish that Defendant's conduct was intentional, intrusive, and highly offensive, and constituted intrusion upon seclusion under binding Third Circuit precedent.

An intrusion is intentional if the actor "believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *In re Nickelodeon*, 827 F.3d at 293 (quoting *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989)). Courts

have consistently used the "presence or absence of consent" to analyze the actor's intent. *Id.*; *see also Adair v. Cigna Corp. Servs., LLC*, No. CV 25-2384, 2026 WL 295744, at *15 (E.D. Pa. Feb. 4, 2026). "'One cannot intrude when one has permission,' so Plaintiffs' intrusion claim will fail if they gave Defendants permission to track, collect, and, share their data." *Adair*, 2026 WL 295744, at *15 (quoting *Popa I*, 426 F. Supp. 3d at 121).

Here, however, Defendant continued to intrude after telling Plaintiff it would not "sell or share [her] personal data." Compl. ¶¶ 42, 46. The continued disclosure of information to third parties in the face of Defendant's promise to the contrary is precisely what the Third Circuit held is highly offensive conduct, and such conduct can sustain a claim for intrusion upon seclusion. *See Google Cookie Litig.*, 806 F.3d at 151 (vacating district court's dismissal of intrusion upon seclusion where Google allowed cookies despite "h[olding] itself out as respecting the cookie blockers."); *see also In re Nickelodeon*, 827 F.3d at 295 (reversing the district court's dismissal of intrusion upon seclusion, holding that "a company may commit intrusion upon seclusion by collecting information using duplicitous tactics, [and] we think that a reasonable jury could reach a similar conclusion with respect to [defendant]"). The Third Circuit has been consistent in its reasoning. "Whether or not data-based targeting is the internet's pole star, users are entitled to deny consent, and they are entitled to rely on the public promises of the companies they deal with." *Google Cookie Litig.*, 806 F.3d at 151.

Taking Plaintiff's allegations as true, she plausibly alleges a claim for intrusion upon seclusion. Defendant presented Plaintiff with a cookie pop-up upon entering the Website, ostensibly allowing her to manage her privacy settings. Compl. ¶¶ 41–44. Plaintiff opted to disable "Performance" and "Targeting" cookies by toggling the accompanying buttons from the "on" to the "off" position. Compl. ¶ 43. The "toggle" button was Plaintiff's opportunity to

consent to sharing her personal data with third parties, and Plaintiff manifestly did not consent. Compl. ¶¶ 72–74; *see also Google Cookie Litig.*, 806 F.3d at 151 ("the activated cookie blocker equates . . . to an express, clearly communicated denial of consent for installation of cookies[.]"). The average website user would not see the choice as a mere preference. Users would reasonably believe that they had control over how Defendant used their data. Compl. ¶¶ 36, 44–45, 64.

By allowing the Code to track Plaintiff as she browsed the Website after she denied consent, Defendant acted in a highly offensive manner. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602, 606 (9th Cir. 2020) (finding that plaintiffs had sufficiently pled "highly offensive" conduct to survive a motion to dismiss by alleging Facebook continued surreptitious data after "set[ting] an expectation that logged-out user data would not be collected[.]"). Defendant deceived Plaintiff into continuing to use the Website under the pretense that she would not be tracked. For these reasons, the Court should deny Defendant's motion to dismiss Plaintiff's Intrusion Upon Seclusion claim.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss should be denied in its entirety.

Dated: June 4, 2026

Respectfully submitted,

/s/ Nicholas A. Colella
Nicholas A. Colella (PA 332699)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
Fax: 412-231-0246
nickc@lcllp.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 4, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*/s/ Nicholas A. Colella*
Nicholas A. Colella