**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAKIESHA SANDERS, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>SHOE CARNIVAL, INC.,<br><br>Defendant. | Civil Action No. 2:26–cv–02186 |

# DEFENDANT SHOE CARNIVAL INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Michelle A. Paninopoulos, Bar No. 329738
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
Email: michelle.paninopoulos@faegredrinker.com

Justin O. Kay (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
1144 15th Street, Suite 3400
Denver, CO 80202
Telephone: (303) 607-3500
Facsimile: (303) 607-3600
Email: justin.kay@faegredrinker.com

Rachel A. Beck (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
1500 K Street NW, Suite 1100
Washington, D.C. 20005
Telephone: (202) 230-5000
Facsimile: (202) 842-8465
Email: rachel.beck@faegredrinker.com

Paul A. Rosenthal (admitted *pro hac vice*)
Krista N. Hartrum (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7000
Facsimile: (973) 360-9831
Email: paul.rosenthal@faegredrinker.com
Email: krista.hartrum@faegredrinker.com

***Counsel for Defendant Shoe Carnival, Inc.***

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

- A. Plaintiff Fails to Allege That the “Contents” of Any “Communication” Were Intercepted. .......... 2
- B. Plaintiff’s Request to Defer the “Contents” Question to Discovery Concedes Her Pleading Failure .......... 5
- C. Plaintiff Consented to Any Collection That Occurred. .......... 6

III. Plaintiff’s Breach of Contract Claim Fails Because She Has Not Identified Material Elements for Her Claim to Survive. .......... 8

- A. Plaintiff Has Not Identified the Essential Terms of the Alleged Contract. .......... 8
- B. Plaintiff Has Not Alleged a Breach. .......... 10
- C. Plaintiff’s Damages Theories Further Underscore the Weakness of the Claim. .......... 11

IV. Plaintiff’s Intrusion Upon Seclusion Claim Fails. .......... 13

V. CONCLUSION .......... 14

**TABLE OF AUTHORITIES**


**Cases** **Page(s)**

*Adair v. Cigna Corp. Servs., LLC*,
818 F. Supp. 3d 641 (E.D. Pa. 2026) ....... 6, 8, 13

*Alhadeff v. Experian Info. Sols., Inc.*,
541 F. Supp. 3d 1041 (C.D. Cal. 2021) ....... 3

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ....... 2

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ....... 4

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ....... *passim*

*Doe II v. MedStar Health, Inc.*,
2026 WL 709810 (Md. Ct. Spec. App. Mar. 13, 2026) ....... 4

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ....... 4

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015) ....... 4, 5, 13, 14

*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ....... 4

*LJL Transp., Inc. v. Pilot Air Freight Corp.*,
962 A.2d 639 (Pa. 2009) ....... 10

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ....... 4

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ....... 11

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ....... 13

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ....... 12

*Oliver v. Noom, Inc.*,
2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) ....... 6

*Opris v. Sincera Reprod. Med.*,
2022 WL 1639417 (E.D. Pa. May 24, 2022) .................. 11

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) .................. 5

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .................. 2

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .................. 3

*In re Rutter's Inc. Data Sec. Breach Litig.*,
511 F. Supp. 3d 514 (M.D. Pa. 2021) .................. 9

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .................. 3

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) .................. 12

*Sparacino v. Scranton Sch. Dist.*,
2025 WL 2524851 (M.D. Pa. Sept. 2, 2025) .................. 4

*Steuart v. McChesney*,
444 A.2d 659 (Pa. 1982) .................. 9, 10

*Thorsen v. Iron & Glass Bank*,
476 A.2d 928 (Pa. Super. Ct. 1984) .................. 11, 12

*Willison v. Consol. Coal Co.*,
637 A.2d 979 (Pa. 1994) .................. 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................. 4

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .................. 3

## I. INTRODUCTION

After twenty pages of briefing, Plaintiff still fails to identify *when* she visited Shoe Carnival's website, *what* she browsed, *what data* was collected from her, or *how* that data fell outside the scope of the consent she gave. As Shoe Carnival showed in its Opening Brief ("Mot."), the Complaint fails to allege the basic factual premises to sustain any of its claims. In place of the particularized factual allegations about Plaintiff's own experience that Rule 12(b)(6) demands, the Complaint substitutes formulaic recitations of WESCA's statutory elements alongside generic descriptions of third-party code. Plaintiff's Opposition ("Opp'n") confirms, rather than cures, these deficiencies.

Although Plaintiff brought her claims under WESCA, Plaintiff's Opposition relies almost entirely on California decisions applying CIPA—a materially different statute with a different standard—while ignoring on-point WESCA and federal ECPA authorities from this Circuit that foreclose her statutory claims.

Plaintiff's common law claims fare no better. She asks the Court to enforce two sentences of the cookie banner while ignoring (and asking the Court to ignore) the other terms. Plaintiff's Opposition neither sheds light on which of the Complaint's allegations describe the material terms of a purported contract nor does it explain how data Plaintiff alleges might have been collected would have exceeded the "Strictly Necessary" cookies that Plaintiff accepted. And her failure to identify any "private affairs or concerns" intruded upon or any highly offensive conduct is fatal to her intrusion upon seclusion claim.

Plaintiff's fallback position—that pleading deficiencies are simply factual questions requiring further discovery—concedes her failure to meet *Iqbal* and *Twombly*. A complaint must state a plausible claim on its face; it may not (as here) rely on formulaic recitations and legal conclusions with the promise of future facts elicited through discovery.

## II. ARGUMENT

### A. Plaintiff Fails to Allege That the "Contents" of Any "Communication" Were Intercepted.

As Shoe Carnival showed in its Opening Brief, the "what" that is allegedly captured drives the analysis of whether that "what" is or is not the "contents" of a "communication." Rather than address this, Plaintiff asserts that the "what" is "everything," and that "everything" must necessarily encompass the "contents" of "communications." (Opp'n at 7.) The law is otherwise: a plaintiff must allege enough to permit the court to discern whether a complaint states a claim. Courts do that by digging into whether there is "sufficient detail" and "specific[ity]" in the description of the "what" to permit the inference that the data at issue is both content and a communication. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 69-70 (W.D. Pa. 2023) ("*GameStop I*"); (Mot. at 5–7.) Without any allegation of "what" is at issue, Plaintiff cannot satisfy her pleading obligations under WESCA. And rather than address the problem, Plaintiff attempts to argue around it and invites this Court to ignore precedent.

***First***, Plaintiff invokes six California cases (only one of which includes a WESCA claim) that do not support the proposition that alleging "everything" satisfies the "what" for a WESCA claim. On the contrary, Plaintiff's cases prove Shoe Carnival's point. In each of the cited cases, the plaintiffs alleged specific facts showing that they actively communicated substantive information that was intercepted. For example, in *Byars v. Goodyear Tire & Rubber Co.,* 654 F. Supp. 3d 1020, 1023 (C.D. Cal. 2023), the plaintiff alleged that Goodyear "recorde[d] and transcribe[d] private conversations" with Goodyear via an online chat feature in the Goodyear website. And in *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1361 (S.D. Cal. 2024), the plaintiffs alleged that their "location, intent to travel, dates of travel, travel locations as well as other personal data requested to book travel plans such as passport number, driver's license

number, date of birth, home address, phone number, email address and/or payment information" was entered into text boxes.[1] Here, Plaintiff pleads nothing relating to her use of the Website beyond a general allegation that (at some unspecified time) she visited the Website and "browsed for various [unspecified] products." (Compl. ¶ 53.) She does not allege that she entered information in a form field, made a purchase, wrote in a chat window, or input search terms. In short, Plaintiff offers no factual support for the Court to "reasonably infer that the Code intercepted Plaintiff's communications." (Opp'n at 9.)

***Second***, Plaintiff provides a screenshot from Paragraph 33 of the Complaint, which she characterizes as "[a]n example of what content is captured during a *typical* website visit." (Opp'n at 7–8 (emphasis added).) This, too, proves Shoe Carnival's point. Plaintiff does not argue (or allege) that the screenshot depicts content captured during *her* website visit. And in any event, a record of what product pages a user browsed is not the "contents" of a "communication"—it is the cyber analog of a security camera recording a customer walking through a store and looking at products. Much as a customer is not intending to communicate anything by walking through a store, *see GameStop I*, 689 F. Supp. 3d at 70, a website visitor is not intending to communicate anything by clicking through product pages. Recording such fundamentally non-communicative activity does not convert it into communicative content. *Id.* ("That's what differentiates this kind of activity from a substantive communication like a verbal conversation or text message."); (Mot. at 6–7 & n.2 (citing cases).)

[1] *See also Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 893–94 (S.D. Cal. 2025) (alleging entry of search terms for prescription medications into website search bar); *Alhadeff v. Experian Info. Sols., Inc.*, 541 F. Supp. 3d 1041, 1044 (C.D. Cal. 2021) (alleging "search terms, information inputted by Plaintiff"); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) (alleging a completed purchase involving entry of credit card information); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (alleging "form field entries").

Plaintiff's response to *GameStop's* reasoning is to invite this Court to ignore it. Plaintiff suggests that the Third Circuit specifically disapproved of the district court's 12(b)(6) analysis by stating that the Third Circuit "found that the *GameStop I* court erred in dismissing the plaintiff's WESCA claim with prejudice, instead affirming dismissal only for lack of Article III standing." (Opp'n at 10.) But the Third Circuit never mentioned, much less criticized or rejected, Judge Ranjan's reasoning on the merits. *See Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025) ("*GameStop II*"). Indeed, courts have continued to treat Judge Ranjan's opinion beyond its Article III analysis as persuasive authority on the interpretation of WESCA and related laws. *See, e.g.*, *Sparacino v. Scranton Sch. Dist.*, 2025 WL 2524851, at *10 (M.D. Pa. Sept. 2, 2025) (citing *GameStop I* for the elements of intrusion upon seclusion); *Doe II v. MedStar Health, Inc.*, 2026 WL 709810, at *7 (Md. Ct. Spec. App. Mar. 13, 2026) (citing *GameStop I* for the proposition that URLs and browsing data are not 'contents' under a wiretapping statute modeled on the ECPA).

Moreover, *GameStop I*'s analysis is consistent with that of numerous other courts, including in the Eastern District of Pennsylvania. *See Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *14–15 (E.D. Pa. Nov. 25, 2024) (holding that browsing data is "the cyber analog to record information [the defendant] could have obtained through a security camera at a brick-and-mortar store," not communication)); *see also Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021).) Shoe Carnival cited, analyzed, and applied this caselaw. (*See* Mot. at 6–7 & n. 2).

***Third,*** Plaintiff urges the Court to rely on *In re Google Inc. Cookie Placement Consumer Privacy Litigation,* 806 F.3d 125 (3d Cir. 2015) *("Google Cookie")*. (Opp'n at 6–7.) But

*Google Cookie* does not help Plaintiff for several reasons. First, the Third Circuit's detailed analysis of "what" may constitute content undermines Plaintiff's argument that alleging "everything" is enough. Second, while the Third Circuit held that "*some* queried URLs qualify as content," 806 F.3d at 139 (emphasis added)—specifically, those reproducing search engine queries[2]—Plaintiff here never alleges that the Website captured her queried URLs or anything similar. Third, the wiretapping claims in *Google Cookie* were dismissed. Indeed, the Third Circuit affirmed dismissal of the CIPA and ECPA claims in *Google Cookie* because the defendants were deemed parties to the communications. *Id.* at 140-43. Thus, if the Court accepts Plaintiff's invitation to follow *Google Cookie*'s reasoning on the issue of "content," it must follow all of *Google Cookie*'s reasoning and dismiss Plaintiff's Complaint because Shoe Carnival is a party to the so-called communications.

### B. Plaintiff's Request to Defer the "Contents" Question to Discovery Concedes Her Pleading Failure

Plaintiff argues that "uncertainty" about whether the Website captured content should be deferred to discovery. (Opp'n at 8.) But any "uncertainty" is the product of Plaintiff's own failure to plead content within her knowledge. The remedy is not discovery; it is dismissal.

The two cases Plaintiff relies on do not support her argument because in both, plaintiffs alleged that they actively entered substantive personal information into the websites. (Opp'n at 8.) In *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 112, 119 (W.D. Pa. 2019) ("*Popa I*"), the plaintiff alleged inputting her email address into form fields and the defendant denied that the plaintiff had done so, creating a factual dispute as to whether anything was intercepted.

[2] Borrowing from the FISA Surveillance Court, the court described a URL query as follows: "if a user runs a search using an [i]nternet search engine, the 'search phrase would appear in the URL after the first forward slash' as part of the addressing information, but would also reveal contents, i.e., the "'substance' " and 'meaning' of the communication." *Google Cookie*, 806 F.3d at 137.

And in *Oliver v. Noom, Inc.*, 2023 WL 8600576, *1, 7 (W.D. Pa. Aug. 22, 2023), the plaintiff alleged that she input personal information into an interactive quiz and the court held that interception of "names, emails, phone numbers, addresses, social security numbers" and similar data might be "content" depending on the surrounding facts and context. In neither case did the court permit discovery to afford the plaintiffs the opportunity to learn more about the nature of their own interactions with the website—information solely within the plaintiffs' possession, custody, and control.

Here, Plaintiff alleges only that she "visited www.shoecarnival.com and certain of its subpages" and "browsed for various products." (Compl. ¶¶ 52–53.) She alleges only passive navigation—the very activity *GameStop I* and other courts have held is not a "communication" at all. This does not create a factual ambiguity requiring discovery. This is a legal question: does the data about website interactions collected from a website visitor's passive browsing, without more, constitute the "contents" of a "communication" under WESCA? The answer is no.

**C. Plaintiff Consented to Any Collection That Occurred.**

In *Adair v. Cigna Corp. Servs., LLC*, 818 F. Supp. 3d 641, 671 (E.D. Pa. 2026), Judge Goldberg recently dismissed the plaintiffs' ECPA, WESCA, and invasion of privacy claims premised on website collection practices. The claims were dismissed because (i) the plaintiffs admitted consent to those practices in their complaint; (ii) "consent is a statutory exception to liability"; and (iii) "where a plaintiff's allegations trigger one of the exceptions, dismissal of the wiretapping claim is warranted." *Id* at 669. Consent is dispositive here (as it was in *Adair*) because Plaintiff's own allegations establish consent. The result should be the same: dismissal.

Plaintiff concedes that she engaged with the Website's consent mechanism and accepted certain categories of cookies. Specifically, the Complaint alleges that users are presented with a cookie consent banner (which Plaintiff partially depicts in her Complaint) and that Plaintiff

exercised choices within that banner—toggling off "Performance" and "Targeting" cookies. (Compl. ¶¶ 41–44, 52.) And the Complaint concedes that only "certain categories" of cookies could be rejected because "Strictly Necessary" cookies are "always active" (as reflected in the partial screen shot). (Compl. ¶ 43.) Plaintiff's screenshot omits the explanation under "Strictly Necessary" cookies that these cookies "cannot be switched off in our system" and "may be set by us or third party providers." (*See* Mot. at 12.)

Ignoring these facts from her own Complaint, Plaintiff argues in conclusory fashion in her Opposition that because she alleges that she "affirmatively *withheld* consent," and because the straightforward disclosures and choices regarding cookies that appeared in the pop-ups that she excerpted in part are "buried," she has alleged enough to get into discovery. (Opp'n at 11.) She is wrong. Having pled consent on the face of her Complaint, Plaintiff must then identify what data fell outside the scope of that consent. She has not. Instead, via her Opposition, she asks the Court to assume without any supporting allegations both (i) that Shoe Carnival ignored her toggle selections and (ii) that the data allegedly intercepted fell outside the categories of cookies to which she consented.

Plaintiff admits in her Opposition that she saw the cookie banner and used the cookie banner. (Opp'n at 11.) She admits in her Complaint that some categories of cookies were "always active" and could not be rejected. (Compl. ¶¶ 43-44.) She alleges in her Complaint that she "chose to reject cookies when Defendant presented her with the option." (Compl. ¶¶ 52.) And she argues in her Opposition that, "Plaintiff has alleged sufficient facts to support the finding that Defendant made an enforceable promise that it would honor her choice not to share her information with third parties." (Opp'n at 12.) But "the option" and the "the choice" was not the rejection of *all* cookies—it was the rejection of *some* cookies. Plaintiff never identifies

either in her Complaint or in her Opposition what cookies—amongst the cookies that she had the option to reject—were not actually rejected. Instead, all she argues is that *some* cookies were active, which is what she agreed to when she interacted with the cookie banner. Thus, as in *Adair*, Plaintiff's "position is irreconcilable with [her] allegations," and Plaintiff's WESCA claim (and invasion of privacy claim) must be dismissed. 818 F. Supp. 3d at 671.

## III. Plaintiff's Breach of Contract Claim Fails Because She Has Not Identified Material Elements for Her Claim to Survive.

Plaintiff's breach claim fails for three independent reasons: she still has not identified the essential terms of the alleged contract, she has not alleged a breach of any specific term, and she has not pleaded cognizable contract damages. As with her retort of "everything" in response to Shoe Carnival's question of "what data was collected?", Plaintiff responds "all of them" in response to Shoe Carnival's questions of "which representations constitute the contract?" and "which representations were breached?" And that is insufficient.

### A. Plaintiff Has Not Identified the Essential Terms of the Alleged Contract.

Plaintiff's breach of contract claim fails because she still has not identified which representations comprise the alleged contract or what essential terms they contain. The Complaint alleges that the contract consists of Shoe Carnival's "representations . . . regarding its use of cookies and tracking technology, ***including*** the representations in its cookie notice." (Compl. ¶ 112.) (emphasis added). That formulation leaves unclear whether Plaintiff relies only on the cookie banner, on privacy policy representations, or on some broader set of website statements. Her Opposition does not cure the problem: it says the banner's alleged promise to allow her to "exercise your privacy rights" and reject categories of cookies is enough (Opp'n at 13–14), but it does not identify the other representations pleaded in the Complaint or explain how they create definite, enforceable terms.

Moreover, even if the banner could supply some contractual terms, Plaintiff reads it selectively. She asks the Court to enforce the portions she says prohibited data sharing while ignoring the portions of the very same banner that disclosed it. (*See* Opp'n at 16–17.) The banner's "Strictly Necessary Cookies" section discloses that certain first- and third-party cookies are "always active" and cannot be disabled. (*See* Mot. at 11–12.) The "Functional Cookies" section states that such cookies "may be set by us or by third party providers" to provide "enhanced functionality and personalization." (*Id.* at 12.) Under Pennsylvania law, "when a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982). Plaintiff's construction—under which toggling off "Performance" and "Targeting" cookies would prohibit all third-party data collection notwithstanding the banner's express disclosure of always-active third-party technologies (Opp'n at 16)—contradicts the banner's plain text. Plaintiff cannot selectively enforce the terms she likes while disregarding those she does not.

Plaintiff's passing citation to *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 537 (M.D. Pa. 2021) (Opp'n at 12), only underscores the problem. *Rutter's* involved a breach of *implied* contract claim supported by a privacy policy, affirmative assurances of data security, and monetary consideration paid for goods and services. *Id.* at 533–37. Plaintiff, by contrast, pleads an express contract based on unspecified "representations" concerning cookies and tracking technology, while identifying, at most, a category-level consent tool and leaving unclear whether the Privacy Policy or any other website statement supplies additional terms. That is not enough. Pennsylvania law requires Plaintiff to identify the contract's essential terms and the specific duty allegedly breached; she cannot avoid that requirement by invoking an implied-contract data-breach case.

**B. Plaintiff Has Not Alleged a Breach.**

As noted above, Plaintiff's answer to "what" was collected is "everything." (*See* Opp'n at 14–15): the Code "intercepted, stored, and recorded everything Plaintiff and the Class Members did on the Website." (Compl. ¶ 4.) That is as unhelpful to a breach of contract claim as it is to a wiretapping claim. The Court cannot evaluate whether a breach occurred without knowing what Plaintiff did on the Website and what data was collected because without that information, the Court cannot determine whether Shoe Carnival violated its alleged promises (whatever they may have been) to not collect some information. A plain reading of the banner makes it clear that "Strictly Necessary" and "Functional" cookies are "always active" and that certain third-party technologies cannot be disabled. (*See* Mot. at 12.) Plaintiff never alleges that the data she claims was collected fell outside the scope of these always-active categories.

Plaintiff's assertion that "specific products" she viewed were intercepted does not help her. (Opp'n at 14.) That assertion rests on the same hypothetical in Paragraph 33 about an unidentified visitor viewing "Women's Nike Initiator Training Shoes," not about Plaintiff viewing those specific shoes. (*See* Compl. ¶ 33.) And even if Plaintiff had alleged that she personally viewed specific products, she still would not have alleged a breach, because she never identified which term of the purported contract was violated by that collection.

Plaintiff also argues that a "reasonable website visitor" would understand the banner to mean that no data would be shared with third parties after opting out of Performance and Targeting cookies. (Opp'n at 16.) But that is a red herring. Pennsylvania law requires the Court to give contract terms their plain and ordinary meaning. *See LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009) (citing *Willison v. Consol. Coal Co.*, 637 A.2d 979, 982 (Pa. 1994); *Steuart*, 444 A.2d at 661). And the question is not what a "reasonable website visitor" would subjectively believe, but what the contract's terms objectively state. *See Steuart*,

444 A.2d at 661 ("when a written contract is clear and unequivocal, its meaning must be determined by its contents alone"). Plaintiff cites no authority for a "reasonable website visitor" standard in contract interpretation because none exists. The banner's plain text discloses that certain third-party technologies are always active. Plaintiff cannot rewrite the plain and ordinary meaning of those terms by substituting her subjective expectations for their actual language.

In short, the lack of allegations means that the Court has no basis to determine how the collection of any particular data point violated any particular term of the cookie banner that Plaintiff claims is part of the contract—a contract that Plaintiff suggests elsewhere is not an enforceable contract because its terms are "buried." (Opp'n at 11).

**C. Plaintiff's Damages Theories Further Underscore the Weakness of the Claim.**

Plaintiff's claimed damages—"unconsented dissemination" as an "affront to her privacy rights and dignitary interests" and "unwanted targeted advertising"—sound in tort, not contract. (Opp'n. at 17). Contract damages are intended to compensate for the financial loss of the benefit of the bargain. *See Thorsen v. Iron & Glass Bank*, 476 A.2d 928, 931 (Pa. Super. Ct. 1984) (measure of damages for breach of contract is to place "the aggrieved party . . . as nearly as possible in the same position [she] would have occupied had there been no breach"). "Unconsented dissemination" and "unwanted targeted advertising" are not financial harms flowing from a contractual breach.

Not one of the cases Plaintiff cites supports her theory. In *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *15 (E.D. Pa. Sept. 30, 2024) (Opp'n at 17), the court allowed a breach of contract claim to proceed where plaintiffs alleged that a healthcare provider shared *individually identifiable health information* with a third party through a patient portal that required agreement to written Terms and Conditions. *Id.* at *1, 5. Similarly, *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *18 (E.D. Pa. May 24, 2022) (Opp'n at 17) involved

sensitive reproductive health data shared by a fertility clinic in connection with a negligence claim. *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1297 (S.D. Cal. 2020) (Opp'n at 17) involved a cybersecurity breach exposing data to cybercriminals, and a contract based on a written Notice of Privacy Practices and Patient Bill of Rights containing explicit commitments. The common thread is clear: each case involved personal data, explicit written privacy commitments, and plaintiffs who paid the defendant for services. None of those features is present here. Here, Plaintiff browsed a public shoe retail website, points to nonspecific "representations" by Shoe Carnival (some of which she argues are unenforceable), and does not allege that she ever paid Shoe Carnival for anything.

Plaintiff's Opposition fails to even address the most analogous authority on this issue, *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024), where the court *dismissed* the breach of contract claim based on an alleged "loss of value" of personal data by a plaintiff who never alleged she paid the defendant. *Id.* at 1092–93 (collecting cases) (Mot. at 13–14). The result should be the same here. Plaintiff does not allege that she paid Shoe Carnival, that she lost money, or that she suffered any cognizable financial harm. Her damages theories are tort claims repackaged as contract claims. As such, they fail.

Plaintiff's fallback position—that she is entitled to at least nominal damages under *Thorsen* does not save her claim. 476 A.2d at 931 (Opp'n at 18). *Thorsen* recognized that "[i]f a plaintiff is able to prove a breach of contract but can show no damages flowing from the breach, the plaintiff is entitled to recover nominal damages." *Id.* But nominal damages presuppose a proven breach; they do not excuse the failure to plead one. As demonstrated above, Plaintiff has not identified any definite contractual term, much less alleged facts showing that any such term was breached. A plaintiff who has failed to plead the existence of an enforceable contract or a

breach of any identified obligation cannot bootstrap her claim past dismissal by invoking the theoretical availability of nominal damages.

**IV. Plaintiff's Intrusion Upon Seclusion Claim Fails.**

Plaintiff's intrusion upon seclusion fails for the same reason that her WESCA and breach of contract claims fail: Plaintiff consented to the conduct at issue. *Adair*, 818 F. Supp. 3d at 671. And it also fails because her allegations demonstrate neither an intrusion nor "highly offensive" conduct. Plaintiff alleges nothing more than that she visited a public shoe retail website and "browsed for various products." (Compl. ¶ 53.) She does not allege that she entered any personal information, accessed a password-protected account, or engaged in any activity involving her "private affairs or concerns." (Mot. 14–15 (citing *GameStop I*, 689 F. Supp. 3d at 72).) Browsing shoes on a commercial website is the digital equivalent of walking through a shoe store—it is a public activity, not a private one. As the Third Circuit has observed, "[m]ost of us understand that what we do on the Internet is not completely private." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016). Indeed, that is what was disclosed in the cookie banner—some cookies were always active. Plaintiff's Opposition does not grapple with this threshold deficiency.

Plaintiff's reliance on *In re Nickelodeon Consumer Privacy Litigation* and *In re Google Inc. Cookie Placement Consumer Privacy Litigation* ("*Google Cookie*") (Opp'n at 18–20) is misplaced. In *Nickelodeon*, the Third Circuit dismissed the intrusion claim against Google (an additional defendant in that case) holding that standard use of third-party cookies was not independently "highly offensive" because "courts have long understood that tracking cookies can serve legitimate commercial purposes." 827 F.3d at 294–95. Viacom, on the other hand, made an explicit, unambiguous promise—"We don't collect ANY personal information about your kids"—but collected it anyway, and on that basis the claim against Viacom survived. *Id.* at 268,

295. And in *Google Cookie*, the Third Circuit permitted the claim to proceed against Google because it circumvented browser-level cookie-blocking mechanisms using hidden code to exploit loopholes in privacy settings—an active override of independent privacy safeguards. *See* 806 F.3d 125, 131–32, 151 (3d Cir. 2015). Here, Plaintiff merely toggled settings on Shoe Carnival's cookie banner. No independent safeguard was overridden, and Plaintiff has not alleged any way in which her settings were not honored. Shoe Carnival made no such blanket promise. It offered choices among categories while disclosing that certain categories were "always active."

## V. CONCLUSION

Plaintiff was given two chances—her Complaint and her Opposition—to identify what happened during her own visit to Shoe Carnival's website, what data fell outside her own consent, and which contractual term was breached. She has done none of these. Defendant Shoe Carnival, Inc. therefore respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: June 25, 2026

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Michelle A. Paninopoulos*
Michelle A. Paninopoulos, Bar No. 329738
michelle.paninopoulos@faegredrinker.com
Paul A. Rosenthal (admitted *pro hac vice*)
paul.rosenthal@faegredrinker.com
Rachel A. Beck (admitted *pro hac vice*)
rachel.beck@faegredrinker.com
Justin O'Neill Kay (admitted *pro hac vice*)
justin.kay@faegredrinker.com
Krista N. Hartrum (admitted *pro hac vice*)
krista.hartrum@faegredrinker.com

One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: +1 215 988 2700
Facsimile: +1 215 988 2757
Attorneys for Defendant, Shoe Carnival Inc.

*Counsel for Defendant Shoe Carnival, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth above, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will provide electronic notification to all counsel of record.

*/s/ Michelle A. Paninopoulos*
Michelle A. Paninopoulos