**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAKIESHA SANDERS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SHOE CARNIVAL, INC.,<br><br>Defendant. | CIVIL ACTION – CLASS ACTION<br><br>Civil Action No. 2:26-cv-2186-GAM |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM**
**OF LAW IN SUPPORT OF ARTICLE III STANDING**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 4

V. CONCLUSION ........ 6

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Adair v. Cigna Corp. Servs., LLC*,
818 F. Supp. 3d 641 (E.D. Pa. 2026) ..... 4

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
300 U.S. 227 (1937) ..... 3

*Barclift v. Keystone Credit Servs., LLC*,
93 F.4th 136 (3d Cir. 2024) ..... 4

*Cobbs v. PetMed Express, Inc.*,
824 F. Supp. 3d 1257 (S.D. Fla. 2026) ..... 6

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ..... 1, 2, 4, 5

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ..... 6

*Delong v. PHE, Inc.*,
No. CV 24-5212, 2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) ..... 1, 4

*Delong v. PHE, Inc.*,
No. CV 24-5212, 2026 WL 2075564 (E.D. Pa. July 16, 2026) ..... 1

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ..... 5

*Garcia v. Anschutz Ent. Grp., Inc.*,
No. 5:25-CV-02282-SSS-DTBX, 2026 WL 1278912 (C.D. Cal. May 5, 2026) ..... 5

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ..... 1, 2

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019) ..... 2

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ..... 1, 2, 4, 5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..... 3

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) ........ 5

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 3, 4

*Theys v. Dental Intel., Inc.*,
No. 25 CV 2464, 2026 WL 636743 (N.D. Ill. Mar. 6, 2026) ........ 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 3

*Wiley v. Universal Music Grp., Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025) ........ 5, 6

*Williams v. Dukehealth*,
No. 1:22-CV-727, 2024 WL 898051 *adopted sub nom.*,
*Naugle v. Duke Univ. Health Sys., Inc.*, No. 1:22-CV-727,
2024 WL 1307216 (M.D.N.C. Mar. 27, 2024) ........ 5

**Statutes**

18 Pa. Cons. Stat. § 5701 ........ 1

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........ 3

**Other Authorities**

Restatement (Second) of Torts § 652B ........ 5

## I. INTRODUCTION

Plaintiff has suffered an injury in fact and therefore has standing to maintain her claims for violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA"), and common law intrusion upon seclusion in this Court.

Through Defendant Shoe Carnival's representations on its website, it created a reasonable expectation of privacy in Plaintiff's internet communications. Concrete harm arises where "website operators promise[ ] to not disclose users' online activity, thereby creating a reasonable expectation of privacy, and then br[eak] their own promises by tracking and disclosing such information." *Delong v. PHE, Inc.*, No. CV 24-5212, 2025 WL 2447787, at *5 (E.D. Pa. Aug. 25, 2025) (Murphy, J.) (citations omitted); *see also Delong v. PHE, Inc.*, No. CV 24-5212, 2026 WL 2075564, at *5 (E.D. Pa. July 16, 2026) (holding plaintiff satisfied concrete harm requirement by alleging defendant retailer's representations created an expectation of privacy).

Shoe Carnival did just that when it promised that it would "not sell or share [Plaintiff's] personal data" if she disabled "Performance" and "Targeting" cookies, then allowed third parties to monitor her activity on its website. Plaintiff is therefore entitled to seek redress in federal court.

Shoe Carnival's conduct mirrors that of the defendants in *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016) ("*In re Nickelodeon*") and *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) ("*Google I*") and is easily distinguishable from *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025). Like the defendants in *In re Nickelodeon* and *Google I*, and unlike the defendant in *Cook*, Shoe Carnival made a "promise to refrain from collecting information[.]" *Cook*, 148 F.4th at 162. "History and tradition reinforce that a concrete injury for Article III standing purposes occurs when . . . [a third party]

tracks a person's internet browser activity without authorization." *Id.* (quoting *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("*Google II*")). Although intangible, this betrayal of Plaintiff's reasonable expectation privacy is sufficiently concrete and particularized to constitute an injury in fact. *See In re Nickelodeon*, 827 F.3d at 272–74; *Google I*, 806 F.3d at 134–35.

## II. BACKGROUND

Plaintiff visited Shoe Carnival's website, www.shoecarnival.com, to browse the company's products. Class Action Complaint, Dkt. No. 1-1 ("Compl.") ¶¶ 9, 52. When Plaintiff arrived at the website, Shoe Carnival presented her with a pop-up cookie consent banner. Compl. ¶ 41. The banner promised that visitors could "exercise [their] privacy rights" by selecting the "Cookie Settings" option, ostensibly giving visitors the choice to disable "Performance" and "Targeting" cookies. Compl. ¶¶ 41–43. The pop-up insisted that by managing these settings, visitors could instruct Shoe Carnival to "not sell or share [their] personal data." Compl. at ¶ 42. Plaintiff selected the "Cookie Settings" option and affirmatively turned off "Performance Cookies" and "Targeting Cookies." Compl. ¶ 52.

Unbeknownst to Plaintiff, Shoe Carnival had embedded snippets of third-party JavaScript code on its website supplied by at least two third parties. Compl. ¶¶ 2–3. The code intercepted every interaction she had with Shoe Carnival's website, as well as pages viewed, URLs visited, browser information, IP address, her device's make, model, and operating system, demographic information, text entries into form fields, keystrokes (what was typed), movements, scrolling, network requests, clicks (including what was clicked on), and moments of inactivity. Compl. ¶¶ 2, 15–19, 26–34.

Despite Plaintiff rejecting "Performance" and "Targeting" cookies, the JavaScript code continued to intercept the contents of Plaintiff's communications to, among other things, generate targeted ads. Compl. ¶¶ 25, 56–57. After leaving Shoe Carnival's website, Plaintiff began receiving advertisements for Shoe Carnival on her Facebook account, and these advertisements specifically highlighted products similar to those that Plaintiff browsed on the website. Compl. ¶ 54. Plaintiff filed a class action complaint in the Court of Common Pleas of Philadelphia County, alleging that Shoe Carnival's conduct constitutes a violation of WESCA and common law intrusion upon seclusion. Shoe Carnival removed the action and has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court now asks the parties to address its subject matter jurisdiction over the action.

## III. LEGAL STANDARD

Article III, section 2 of the United States Constitution confines the jurisdiction of federal courts to "cases" and "controversies." *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–41 (1937). This doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff must have (1) suffered an injury in fact that is concrete, particularized, and actual or imminent that is (2) likely to have been caused by the defendant and (3) redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

An injury in fact need not be tangible to be concrete for the purpose of Art. III standing, and "[w]hen evaluating whether such a harm qualifies as an injury-in-fact, judges should consider whether the purported injury 'has a close relationship to a harm that has traditionally

been regarded as providing a basis for a lawsuit in English or American courts.'" *In re Nickelodeon*, 827 F.3d at 273 (quoting *Spokeo*, 578 U.S. at 341–42). Courts within the Third Circuit "'compare the kind of harm a plaintiff alleges with the kind of harm caused by the comparator tort'" and do not require "a strict 'element-based approach, wherein a plaintiff's alleged harm must not lack any element of the comparator tort that was essential to liability at common law.'" *Cook*, 148 F.4th at 158–59 (quoting *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 144–45 (3d Cir. 2024)).

**IV. ARGUMENT**

Plaintiff's injury is akin to that created by an intrusion upon seclusion, and is therefore sufficiently concrete, particularized, and actual to give rise to Article III standing. As another judge of this District recently observed, "the *Nickelodeon* court emphasized that the heart of the intrusion-upon-seclusion claim was . . . that it created an expectation of privacy by promising not to track and proceeded to do so anyway under false pretenses." *Delong*, 2025 WL 2447787, at *5. While the Court has found that "claims alleging third-party tracking of website browsing and purchase information, without an expectation of privacy, cannot allege the same kind of harm as [ ] intrusion-upon-seclusion[,]" *id.*, Plaintiff had a reasonable expectation of privacy on Shoe Carnival's website. Shoe Carnival explicitly represented that she could instruct it to "not sell or share [her] personal data." Shoe Carnival proceeded to allow third parties to collect a detailed profile of Plaintiff's actions and behavior, identifying her social media profile and sending her the very promotions she was promised she could opt out of.

Unlike other privacy torts, the injury caused by intrusion upon seclusion "does not turn on the exposure or the use of private information. Nor does it depend upon any publicity given to the person whose interest is invaded or to his affairs." *Adair v. Cigna Corp. Servs., LLC*, 818 F.

Supp. 3d 641, 660 (E.D. Pa. 2026) (Beetlestone, J.) (citations and quotation marks omitted). "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the information acquired." *Cook*, 148 F. 4th at 160 (quoting Restatement (Second) of Torts § 652B). Here, Plaintiff alleges that Shoe Carnival represented that her "individual information would not be shared because [she] could opt out of unnecessary cookies, and yet it was." *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1134 (N.D. Cal. 2025) (citations omitted). Plaintiffs "have a reasonable expectation of privacy in data . . . when they expressly reject or otherwise fail to consent to the tracking, collection, and/or disclosure of that data." *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 866 (N.D. Cal. 2025). Plaintiff has "therefore sufficiently pleaded an injury-in-fact for purposes of Article III standing." *Wiley*, 826 F. Supp. at 1134.

The Court need not find that the content of Plaintiff's communications *itself* was private in nature. *See Nickelodeon*, 827 F.3d at 269, 272–74 (finding concrete privacy harm where subject matter of tracked information was "which games a child plays and which videos a child watches" on websites such as Nick.com.). And, as the Third Circuit has explained, a plaintiff need not prove every element of the comparator claim to establish standing. Creating an expectation of privacy in online communications, then disclosing them anyway, gives rise to an injury in fact that is well-recognized. Courts across the country have found that plaintiffs have standing to bring wiretapping and invasion of privacy claims based on analogous conduct. *See, e.g.*, *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914–15 (N.D. Cal. 2026); *Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-CV-02282-SSS-DTBX, 2026 WL 1278912, at *4 (C.D. Cal. May 5, 2026); *Williams v. Dukehealth*, No. 1:22-CV-727, 2024 WL 898051, at *4, *adopted sub nom.*, *Naugle v. Duke Univ. Health Sys., Inc.*, No. 1:22-CV-727, 2024 WL 1307216 (M.D.N.C.

Mar. 27, 2024); *cf. Cobbs v. PetMed Express, Inc.*, 824 F. Supp. 3d 1257, 1267 (S.D. Fla. 2026); *Theys v. Dental Intel., Inc.*, No. 25 CV 2464, 2026 WL 636743, at *5 (N.D. Ill. Mar. 6, 2026); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1191–94 (S.D. Cal. 2024). Shoe Carnival's "misrepresentations make the actions alleged here sufficiently 'highly offensive' for an invasion of privacy or intrusion upon seclusion claim at the pleadings stage." *Wiley*, 826 F. Supp. at 1134.

## V. CONCLUSION

For the foregoing reasons, the Court should find that Plaintiff has standing to maintain her claims in federal court.

Dated: July 27, 2026

Respectfully submitted,

*/s/ Nicholas A. Colella*
Nicholas A. Colella (PA Bar No. 332699)
Anasuya E. Shekhar (PA Bar No. 333531)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
Fax: 412-231-0246
nickc@lcllp.com
anasuya@lcllp.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 27, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*/s/ Nicholas A. Colella*
Nicholas A. Colella