**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAKIESHA SANDERS, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>SHOE CARNIVAL, INC.,<br><br>Defendant. | Civil Action No. 2:26–cv–02186 |

**DEFENDANT SHOE CARNIVAL, INC.'S SUPPLEMENTAL MEMORANDUM ON THE COURT'S ARTICLE III JURISDICTION IN RESPONSE TO THE COURT'S JULY 13, 2026 ORDER**

Michelle A. Paninopoulos, Bar No. 329738
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
Email: michelle.paninopoulos@faegredrinker.com

Justin O. Kay (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
1144 15th Street, Suite 3400
Denver, CO 80202
Telephone: (303) 607-3500
Facsimile: (303) 607-3600
Email: justin.kay@faegredrinker.com

Rachel A. Beck (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
1500 K Street NW, Suite 1100
Washington, D.C. 20005
Telephone: (202) 230-5000
Facsimile: (202) 842-8465
Email: rachel.beck@faegredrinker.com

Paul A. Rosenthal (admitted *pro hac vice*)
Krista N. Hartrum (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7000
Facsimile: (973) 360-9831
Email: paul.rosenthal@faegredrinker.com
Email: krista.hartrum@faegredrinker.com

***Counsel for Defendant Shoe Carnival, Inc.***

Pursuant to the Court's July 13, 2026 Order ("Order") directing the parties to address whether Plaintiff pleads a cognizable injury in fact under *In re BPS Direct, LLC & Cabela's, LLC, Wiretapping Litigation*, 175 F.4th 423 (3d Cir. 2026) and *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025), Defendant Shoe Carnival, Inc. ("Shoe Carnival") respectfully submits this supplemental memorandum.

The Parties have conferred and agree that under current Third Circuit precedent, this Court has Article III jurisdiction. It is Shoe Carnival's position that the Court has Article III jurisdiction because under *Cook*, allegations that tracking occurred in violation of a promise not to track internet browsing (the theory here) state a concrete privacy harm sufficient for standing. But while those allegations are sufficient to create standing, they are not sufficient to state a claim, meaning that this Court should dismiss Plaintiff's claims pursuant to Rule 12(b)(6).

## I. LEGAL STANDARD

Article III limits federal court jurisdiction to actual cases and controversies. A plaintiff invoking that jurisdiction must demonstrate an injury in fact that is concrete and particularized, fairly traceable to the defendant's conduct, and likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An intangible harm, such as the privacy violation alleged here, is concrete for Article III purposes only if it bears a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021); *Cook*, 148 F.4th at 158.

Courts have applied different frameworks to decide whether a sufficiently close relationship exists between the intangible harm claimed and an analogous common-law tort. The Third Circuit rejected as overly "rigid" the "element-based" framework under which "'a plaintiff's alleged harm must not lack ***any element*** of the comparator tort that was essential to liability at common law.'" *Id.* at 158 (quoting *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 144 (3d

Cir.), *cert. denied*, 145 S. Ct. 169 (2024)) (emphasis added). Instead, courts in this Circuit must "'compare the ***kind*** of harm a plaintiff alleges with the ***kind*** of harm caused by the comparator tort.'" *Id.* at 158–59 (quoting *Barclift*, 93 F.4th at 144–45) (emphasis added). The test is whether a plaintiff's alleged injury is analogous in kind to a harm traditionally protected at common law.

## II. ARGUMENT

### A. *Cook* Recognizes Standing Based on a Defendant's Alleged Promise Not to Collect Browsing Information.

In *Cook*, the plaintiff argued she had standing under two Third Circuit cases holding there was Article III jurisdiction over claims involving the collection of web browsing activity: *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016) and *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125 (3d Cir. 2015) (*Google II*). But the *Cook* court explained that in *In re Nickelodeon* and *Google II*, a concrete injury sufficient for standing arose from allegations that the defendants tracked the plaintiffs' browsing behavior "in violation of [their] own promises not to do so." 148 F.4th at 162 (quoting *Google II*, 806 F.3d at 325). Those promises made *In re Nickelodeon* and *Google II* "indistinguishable" from each other for standing purposes, but "distinguishable" from *Cook*. *Id.* "By contrast, Cook alleged only that GameStop [did] not ask website visitors . . . for prior consent . . ." *Id.*

In other words, the plaintiff in *Cook* never alleged that GameStop made any promise not to collect information. As the court in *Adair v. Cigna Corporate Services, LLC* explained, "GameStop did not create an expectation of privacy where it otherwise would not have existed by explicitly 'promis[ing] to refrain from collecting information.'" 818 F. Supp. 3d 641, 661 (E.D. Pa. 2026) (recognizing that *In re Nickelodeon* and *Google II* conferred standing based on promises not to collect information, and distinguishing *Cook* on that basis). Indeed, the same counsel of

record for Plaintiff here has previously reached the same conclusion in addressing the same issue on behalf of other plaintiffs.

In supplemental briefing requested by the Third Circuit in *Popa v. Harriet Carter Gifts, Inc.*, No. 25-1760 (3d Cir.), the brief submitted on behalf of plaintiff Ashley Popa contained a section entitled "What rules were established by *Cook*?" Suppl. Br. of Appellant, 2026 WL 414915, at *1–2 (Feb. 13, 2026) (attached hereto as Ex. No. 1). There, her attorneys (the same law firm that represents Plaintiff here—Carpenter Lynch) asserted that under *Cook*, a cognizable Article III privacy harm can occur through ***either*** the collection of "personal or sensitive" data ***or*** "if [the plaintiff] can point to a promise made by a defendant that it would not invade the plaintiff's privacy." *Id.* And in opposition to a motion to dismiss in *DeValkeneer v. Huntington Bancshares, Inc.*, counsel for Ms. DeValkeneer (one of the same attorneys at Carpenter Lynch who represents Plaintiff here) argued that *In re Nickelodeon*, *Google II*, and *Cook* established the Third Circuit rule that Article III standing exists where "plaintiffs allege[] that a third party . . . tracked their personal internet browsing information in violation of the third party's own promises not to do so." Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, ECF No. 20 at 13, *DeValkeneer v. Huntington Bancshares, Inc.*, No. 2:25-cv-02020-CCW (W.D. Pa. Feb. 20, 2026) (arguing that while "[p]laintiff does not believe that Article III standing for privacy cases should depend on whether the defendant promised not to invade the plaintiff's privacy, . . . *Cook* is the binding precedent this Court must apply.") (attached hereto as Ex. No. 2).

Thus, under *Cook*, Article III standing does not require that a plaintiff allege collection of "personal or sensitive data" where that plaintiff alleges that the defendant collected data in violation of a promise not to do so—which is what Plaintiff has alleged here.

**B. Sanders Alleges that Shoe Carnival Violated Its Privacy Promises.**

Just as in *Google II* and *Nickelodeon*—but not in *Cook*—Plaintiff here alleges that Shoe Carnival promised not to collect browsing information when it presented her with a cookie banner that she configured to reject cookies:

> 6. Defendant offers Website visitors the ability to select "Do Not Sell or Share My Personal Data." Defendant represents to Website visitors that by selecting this option, they can choose not to allow software like the Code described herein to run on the Website. However, even after a Website visitor tells the Website not to sell or share personal data, Defendant *still* allows the Code Vendors to embed the Code and capture all Website visitor's Website Communications without their consent.

(Compl. ¶ 6.)

> 22. Plaintiff did not consent to the interception of her data by FullStory. To the contrary, Plaintiff rejected the Website's use of the Code when Defendant presented her with the option. FullStory's nonconsensual interception of Plaintiff's data resulted from Defendant's conduct, constitutes an invasion of privacy, breach of contract, and violates Pennsylvania law.

(*Id.* ¶ 22.)

41. Defendant's Website purports to provide users with the opportunity to decline the third-party tracking as described herein. When a Website visitor visits the Website, Defendant displays a pop-up box telling users that the site uses cookies to "measure and improve our sites and services, to assist our marketing campaigns and to provide personalized content and





advertising." Further, Defendant's Website tells visitors, "By clicking the button on the right, you can exercise your privacy rights:"




*Cookie notification pop-up on Defendant's Website.*

(*Id.* ¶ 41.)

> 45. Users of Defendant's Website who choose to "Manage Consent Preferences" by disallowing cookies are telling Defendant, unequivocally, that they ***do not consent*** to cookie tracking. These users have a clear and objectively reasonable expectation that their data will not be collected, disclosed, used, or analyzed in any way—let alone by unknown third parties.
>
> 46. However, Defendant does not respect its Website users' choices to opt out of the use and disclosure of their data. Instead, Defendant enabled FullStory and TikTok to continue to collect, use, and analyze Website Communications even when users expressly told Defendant they did not consent to such tracking.

(*Id.* ¶¶ 45–46.)

> 52. While in Pennsylvania, Plaintiff visited www.shoecarnival.com and certain of its subpages. Plaintiff chose to reject cookies when Defendant presented her with the option.

(*Id.* ¶ 52.)

> 66. Even worse, when Defendant asked Plaintiff and Class Members for consent, Defendant had no intention of disallowing the Code from running when Website visitors configured their preferences to disallow certain categories of cookies from operating on the Website.
>
> 67. When Plaintiff and Class Members chose to "Reject All" or configured their preferences to disallow certain categories of cookies, Defendant still allowed the Code Vendors to deploy the Code and capture Website Communications.

(*Id.* ¶¶ 66–67.)[1]

[1] Plaintiff repeats and expands on these allegations in her Opposition to Shoe Carnival's Motion to Dismiss. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 21 at 1–4, 11–14, 19–20.)

Indeed, Sanders argues that the privacy promise was so clear that her configuration of Shoe Carnival's cookie banner created a binding contract (*id.* ¶¶ 112–13)—a characterization Shoe Carnival disputes via its motion to dismiss, but that dispute does not deprive this Court of the ability to decide the issue as part of a motion under Rule 12(b)(6).

In short, Plaintiff says that she was injured because she "took Shoe Carnival at its word" and "selected the 'Cookie Settings' option," affirmatively turning off "Performance Cookies" and "Targeting Cookies." (Pl.'s Opp'n at 3 (citing Compl. ¶ 52).) Plaintiff made this choice deliberately because she "did not consent to her Website Communications being shared with third parties, and communicated this to Defendant in the exact manner that Defendant had invited her to do so." (*Id.* (citing Compl. ¶ 64)). Under *Cook*, Article III is satisfied and whether Plaintiff has adequately stated a claim on the merits is an issue for this Court to decide.

## III. CONCLUSION

For all the reasons articulated in its Motion to Dismiss, Shoe Carnival believes Plaintiff has not stated any claim for which she is entitled to relief. The Complaint concedes that Shoe Carnival's cookie banner permitted Plaintiff to disallow only "certain categories of cookie tracking," not all tracking. (Compl. ¶¶ 44, 66–67, 112.) The cookie banner itself disclosed that some "Strictly Necessary" and "Functional" cookies are "always active" and cannot be disabled. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mot."), ECF No. 20–1, at 12–13.) The Complaint does not allege which category of data collection her rejection actually covered, or that the FullStory and TikTok technologies she challenges fell within the categories she disallowed rather than those that were always active. (Def.'s Mot. at 9–13.) As Shoe Carnival explained in its pending Motion to Dismiss, the Complaint's factual gaps mean Plaintiff has not plausibly alleged that Shoe Carnival broke its promise as to the specific technologies she challenges. (*Id.*)

But those are merits questions, and "we must not 'confuse weakness on the merits with absence of Article III standing.'" *Falcone v. Dickstein*, 92 F.4th 193, 203 (3d Cir. 2024) (cleaned up), *cert. denied sub nom. Murray-Nolan v. Rubin*, 144 S. Ct. 2560 (2024). For Article III standing, what matters is that Plaintiff has pleaded a privacy injury based on an allegedly broken alleged promise regarding her alleged privacy. Under *Cook*, this states a concrete and particularized harm, and the Court has jurisdiction under Article III to hear this case and decide (and grant) Defendant's Motion.

Dated: July 27, 2026

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Michelle A. Paninopoulos*
Michelle A. Paninopoulos, Bar No. 329738
michelle.paninopoulos@faegredrinker.com
Paul A. Rosenthal (admitted *pro hac vice*)
paul.rosenthal@faegredrinker.com
Rachel A. Beck (admitted *pro hac vice*)
rachel.beck@faegredrinker.com
Justin O. Kay (admitted *pro hac vice*)
justin.kay@faegredrinker.com
Krista N. Hartrum (admitted *pro hac vice*)
krista.hartrum@faegredrinker.com

One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: +1 215 988 2700
Facsimile: +1 215 988 2757

*Counsel for Defendant Shoe Carnival, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth above, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will provide electronic notification to all counsel of record.

*/s/ Michelle A. Paninopoulos*
Michelle A. Paninopoulos