**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAKIESHA SANDERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHOE CARNIVAL, INC.,<br><br>Defendant. | Civil Action No. 2:26–cv–02186 |

**DEFENDANT SHOE STATION GROUP, INC.'S ANSWER AND DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant Shoe Station Group, Inc., formerly known as Shoe Carnival, Inc. ("Shoe Station" or "Defendant"), hereby answers the Class Action Complaint ("Complaint") of Plaintiff Lakiesha Sanders, individually and on behalf of all others similarly situated ("Plaintiff"), as follows:

## DENIAL OF HEADINGS

The headings and subheadings contained in Plaintiff's Complaint are inserted for organizational purposes only and do not constitute factual allegations requiring a response. To the extent any heading or subheading purports to contain factual allegations, legal conclusions, or characterizations requiring a response, they are denied.

## I. NATURE OF THE ACTION

1. This is a class action brought against Defendant for the wiretapping of electronic communications of visitors to Defendant's Website, https://https://www.shoecarnival.com/ ("Website"), and all of the Website's subpages.

**ANSWER:** Shoe Station admits only that Plaintiff purports to bring a class action and that Shoe Station operates the website located at www.shoecarnival.com (the "Website"). Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 1.

2. Defendant procures at least two third-party vendors ("Code Vendors") to embed snippets of JavaScript computer code (the "Code") on the Website, which then deploys on each Website visitor's internet browser for the purpose of intercepting and recording the Website visitor's electronic communications with the Website. The Code intercepts Website visitors' page views, URLs of web pages visited, browser information, IP address, demographic information, form submissions, and/or other electronic communications in real-time (collectively, "Website Communications").

**ANSWER:** Paragraph 2 contains legal conclusions, including whether the Website's use of third-party code "intercepts" any electronic communications within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is required. To the extent that a response is required, Shoe Station admits only that the Website has incorporated certain third-party software code, including code offered by FullStory and TikTok, that can be configured to help understand visitor behavior and optimize user experience. Shoe Station denies that it "procures" any third party to embed or deploy software. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 2.

3. The Code Vendors include FullStory, a web analytics platform, and social media company TikTok.

**ANSWER:** Shoe Station admits only that FullStory and TikTok are third parties whose software code has been incorporated on the Website. Shoe Station states that the remaining allegations of Paragraph 3 concern third parties, FullStory and TikTok, and how those third parties describe or characterize their own businesses. These are not factual allegations specific to

Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of those allegations because they concern the conduct of third parties and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 3.

4. The Code procured by Defendant surreptitiously and instantaneously intercepted, stored, and recorded everything Plaintiff and the Class Members did on the Website, e.g., what they searched for, what they looked at, the information they input, and what they clicked on for the entire duration of their visit.

**ANSWER:** Shoe Station states that whether any communication was "intercepted" within the meaning of 18 Pa. Cons. Stat. § 5702 is a legal conclusion to which no response is required. Plaintiff does not define or explain what it means for code to have "instantaneously" "intercepted, stored, and recorded" "everything" Plaintiff and the Class Members did on the Website, and those terms are vague and ambiguous such that Shoe Station cannot meaningfully admit or deny them. Shoe Station admits only that the Website has incorporated certain third-party software code, including code offered by FullStory and TikTok, that can be configured to help understand visitor behavior and optimize user experience. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 4.

5. The Code Vendors create and deploy the Code at Defendant's request, which captures and stores the Website Communications of each Website visitor.

**ANSWER:** Paragraph 5 contains allegations regarding how third parties create, deploy, and store data collected by their own software code. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of those allegations because they concern the conduct of third parties and Plaintiff's interpretations thereof. Shoe Station admits only that the Website has incorporated certain third-party software code, including code offered by FullStory and TikTok, that can be configured to

help understand visitor behavior and optimize user experience. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 5.

6. Defendant offers Website visitors the ability to select "Do Not Sell or Share My Personal Data." Defendant represents to Website visitors that by selecting this option, they can choose not to allow software like the Code described herein to run on the Website. However, even after a Website visitor tells the Website not to sell or share personal data, Defendant still allows the Code Vendors to embed the Code and capture all Website visitor's Website Communications without their consent.

**ANSWER:** Shoe Station admits only that the Website provides visitors with a cookie preference mechanism, including a window titled "Do Not Sell or Share My Personal Data," which speaks for itself, and Shoe Station respectfully directs the Court to that material for the complete content and context thereof. Shoe Station denies the characterizations Plaintiff insinuates are to be drawn from that material and denies that Plaintiff's selective quotations, excerpts, and summaries are a full, complete, or accurate recitation of the Website's disclosures, which state that certain "Strictly Necessary Cookies" are "Always Active" and cannot be disabled. Shoe Station denies that it represented that selecting any option would prevent all software from running on the Website, and denies that it allows third parties to capture Website Communications without consent. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 6.

7. Defendant knowingly, willfully, and intentionally procured the interception of, and used, the electronic communications at issue without the knowledge or prior consent (or, in some cases, against their direct rejection of consent) of Plaintiff or the Class Members. Defendant did so for its own financial gain and in violation of Plaintiff's and the Class Members' substantive legal privacy rights under state wiretapping laws and common law.

**ANSWER:** Shoe Station denies the allegations of Paragraph 7.

8. Plaintiff brings this action individually and on behalf of a class of all Pennsylvania citizens whose Website Communications were intercepted through the use of the Code embedded on Defendant's Website. Plaintiff seeks all civil remedies provided under the

causes of action, including but not limited to compensatory, statutory, and/or punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

**ANSWER:** Shoe Station admits only that Plaintiff purports to bring this action individually and on behalf of a putative class and that Plaintiff seeks the remedies described in Paragraph 8. Shoe Station further states that the Court dismissed Plaintiff's claims for intrusion upon seclusion and breach of contract. *See Sanders v. Shoe Carnival, Inc.*, No. 2:26–cv–02186, ECF No. 27, at 12-14 (E.D. Pa. Sept. 17, 2026). Shoe Station specifically denies that any class can or should be certified and denies that Plaintiff or any putative class member is entitled to any relief whatsoever. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 8.

## II. PARTIES

9. Plaintiff Lakiesha Sanders is, and was at all relevant times, a resident and citizen of the Commonwealth of Pennsylvania, residing in Philadelphia County.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9.

10. Defendant Shoe Carnival, Inc., is a corporation organized under the laws of Indiana, with its principal place of business located in Fort Mill, South Carolina, and who is registered to do business in Pennsylvania.

**ANSWER:** Shoe Station admits that Shoe Station Group, Inc., formerly known as Shoe Carnival, Inc., is a corporation organized under the laws of Indiana with its principal place of business in Fort Mill, South Carolina, and that it is registered to do business in Pennsylvania. Shoe Station states that, effective June 12, 2026, Shoe Carnival, Inc. changed its corporate name to Shoe Station Group, Inc. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 10.

11. Defendant owns, manages, and operates the Website at www.shoecarnival.com, including its subpages.

**ANSWER:** Shoe Station admits that it owns and operates the Website, including its subpages. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 11.

## III. JURISDICTION AND VENUE

12. This court has personal jurisdiction over Defendant because Defendant is registered to do business in Pennsylvania, and thus "carries on a continuous and systematic part of its genuine business within this Commonwealth." 42 Pa. C.S. § 5301(a)(2)(iii). Plaintiff's and Class Members' claims arise directly from business transactions that Defendant conducts within Pennsylvania.

**ANSWER:** Paragraph 12 contains legal conclusions to which no response is required. To the extent that a response is required, Shoe Station states that this action was removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and that, for purposes of this action only, Shoe Station does not contest that this Court may exercise personal jurisdiction over it. Shoe Station admits that it is registered to do business in Pennsylvania. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 12.

13. Venue is appropriate in this Court under Pa. R.C.P. 1006 because the cause of action arose in this County, and the transaction or occurrence took place out of which the cause of action arose in this County.

**ANSWER:** Paragraph 13 contains legal conclusions to which no response is required. To the extent that a response is required, Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding where the alleged cause of action arose and where the alleged transaction or occurrence took place. Shoe Station does not contest venue in this District for purposes of this action. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 13.

# IV. FACTUAL ALLEGATIONS

## A. How the Code Intercepts Website Communications

**FullStory**

14. FullStory is a web-based intelligence system company that develops marketing analytics software of the same name.

**ANSWER:** Paragraph 14 contains allegations regarding a third party, FullStory. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 because they concern the conduct of a third party and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 14.

15. One of the features of FullStory's software is a session replay Code, enabling a company who uses the software to record, reconstruct, and visually play back a web user's website session based on the information FullStory's software collects. Put another way, FullStory's session replay script "collects data pertaining to an individual's interactions with a website" and that data "can later be overlaid upon an image of the website to produce a video-like reproduction of a user's online experience."[1]

**ANSWER:** Paragraph 15 contains allegations regarding the features and operation of software developed and offered by a third party, FullStory, and purports to quote a third-party publication. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 because they concern the design and operation of third-party software and Plaintiff's interpretations thereof. Shoe Station states that the publication referenced in the footnote to Paragraph 15 speaks for itself, and Shoe Station denies the characterizations Plaintiff insinuates are to be drawn from the quoted language. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 15.

[1] Session Replay Scripts: A Guide for Privacy Professionals, Future of Privacy Forum (February 2018), https://fpf.org/wp-content/uploads/2018/03/FPF-Guide-to-Session-Replay-Scripts.pdf.

16. As explained on FullStory's website, the software is implemented when a "small snippet" of JavaScript code is placed in the code of a client website (the "FullStory Script").[2] The FullStory Script is "super small" and "designed to be unnoticeable to any user of" a website.[3] Once a website installs the FullStory Script, that code acts as a secret wiretap that sends users' Website Communications to FullStory in real time, instantly reporting every keystroke, movement, click, and/or moment of inactivity to the FullStory server.

**ANSWER:** Paragraph 16 contains allegations regarding the implementation and operation of software developed and offered by a third party, FullStory, and purports to quote FullStory's website. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 because they concern the design and operation of third-party software and Plaintiff's interpretations thereof. Shoe Station states that the FullStory materials referenced in the footnotes to Paragraph 16 speak for themselves. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 16.

17. The FullStory Code deploys automatically, and the wiretapping commences immediately on the visitor's web browser when the visitor loads a website in their browser.

**ANSWER:** Paragraph 17 contains allegations regarding the general operation of software developed and offered by a third party, FullStory. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 because they concern the design and operation of third-party software and Plaintiff's interpretations thereof. Shoe Station further states that Plaintiff does not define or explain what it means for code to "deploy[] automatically," and that

---

[2] The Definite Guide to Session Replay, FullStory (Oct. 8, 2024), https://www.fullstory.com/session-replay.

[3] Installing the FullStory Script, FullStory, https://help.fullstory.com/hc/en-us/articles/360020623514-Installing-the-FullStory-Script (last visited February 9, 2026).

the phrase is vague and ambiguous such that Shoe Station cannot meaningfully admit or deny it. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 17.

18. The FullStory Script enables the identification of the specific user for each website session over time and across devices.[4]

**ANSWER:** Paragraph 18 contains allegations regarding the capabilities of software developed and offered by a third party, FullStory. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 because they concern the design and operation of third-party software and Plaintiff's interpretations thereof. Shoe Station states that the FullStory material referenced in the footnote to Paragraph 18 speaks for itself. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 18.

19. As a user interacts with any website with the embedded FullStory Script, "each click, tap, URL visit, and every other interaction is sent in tiny little packets to that existing session at FullStory servers[5]." This includes button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, text inputs, page navigation, changes to visual elements in the browsers, network requests, and more.[6][]

**ANSWER:** Paragraph 19 contains allegations regarding the interactions of unidentified users with unidentified websites and the operation of software developed and offered by a third party, FullStory, and purports to quote third-party publications. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 because they concern the conduct of

---

[4]See, e.g., JavaScript API: Identifying users, FullStory, https://help.fullstory.com/hc/en-us/articles/360020828113 (last visited February 9, 2026).

[5]Steven Shyne, Explained: Wait How Does FullStory Work?, CXperts (Jul. 19, 2022), https://www.cxperts.io/post/how-does-fullstory-work

[6] How does FullStory capture data to recreate my users' experience?, FullStory, https://help.fullstory.com/hc/en-us/articles/360032975773-How-does-FullStory-capture-data-to-recreate-my-users-experience (last visited February 9, 2026)

unknown and unidentified website users, the design and operation of third-party software, and Plaintiff's and those third parties' interpretations thereof. Shoe Station states that the publications referenced in the footnotes to Paragraph 19 speak for themselves. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 19.

20. Defendant installed Full Story Code on the Website:




**ANSWER:** Shoe Station admits only that FullStory code has been incorporated on the Website. Shoe Station states that the image reproduced in Paragraph 20 of the Complaint speaks for itself, and Shoe Station denies that it is a complete or accurate depiction of the Website's functionality. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 20.

21. Through this technology, FullStory intercepted Plaintiff's Website Communications, as well as the Website Communications of other users of Defendant's Website. As a result, information Plaintiff and Class Members intended to provide to Defendant was intercepted by FullStory.

**ANSWER:** Paragraph 21 contains allegations regarding the operation of software developed and offered by a third party, FullStory. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 21 because they concern the design and operation of third-party software, the conduct of a third party, and Plaintiff's interpretations thereof. Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's and Class Members' subjective intentions, including what information they intended to provide to Shoe Station. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 21.

22. Plaintiff did not consent to the interception of her data by FullStory. To the contrary, Plaintiff rejected the Website's use of the Code when Defendant presented her with the option. FullStory's nonconsensual interception of Plaintiff's data resulted from Defendant's conduct, constitutes an invasion of privacy, breach of contract, and violates Pennsylvania law.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's subjective choices and knowledge while browsing the Website. Shoe Station further states that Paragraph 22 contains allegations regarding the conduct of a third party, FullStory. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22 because they concern the conduct of a third party and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 22.

**TikTok**

23. TikTok has more than 750 million monthly users worldwide and is one of the top five largest social media companies. TikTok's main source of revenue is selling ads, with reports showing that TikTok's ad revenue exceeds $12 billion.

**ANSWER:** Paragraph 23 contains allegations regarding a third party, TikTok. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 because they concern

the conduct of a third party and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 23.

24. TikTok's parent company reports similar growth with its advertising revenue increasing year to year, jumping from just $7.3 billion in 2018 to $38.6 billion by 2021.

**ANSWER:** Paragraph 24 contains allegations regarding a third party, TikTok's parent company. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 because they concern the conduct of a third party and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 24.

25. To increase its advertising revenue, TikTok offers tracking and analytics services, including the TikTok Pixel. More than a million websites, including Defendant's Website, incorporate the TikTok Pixel.

**ANSWER:** Shoe Station admits only that the TikTok Pixel has been incorporated on the Website. The remaining allegations of Paragraph 25 concern a third party, TikTok, and are not factual allegations specific to Shoe Station; Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of those allegations because they concern the conduct of a third party and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 25.

26. The TikTok Pixel is a piece of HTML code placed on a website that tracks users' interactions, including what pages they view, buttons they click on, and information they enter, along with a unique identifier.

**ANSWER:** Paragraph 26 contains allegations regarding the operation of software developed and offered by a third party, TikTok. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26 because they concern the design and operation of third-

party software and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 26.

27. The TikTok Pixel intercepts these communications immediately after they are sent and before they are received by the website operator.

**ANSWER:** Paragraph 27 contains allegations regarding the operation of software developed and offered by a third party, TikTok. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27 because they concern the design and operation of third-party software and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 27.

28. In addition, the TikTok Pixel collects identifiable information such as the users' IP address, the device's make, model, and operating system, browser information, a unique session ID, and first- and third-party cookie data that can be associated with a specific user.

**ANSWER:** Paragraph 28 contains allegations regarding the operation of software developed and offered by a third party, TikTok. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28 because they concern the design and operation of third-party software and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 28.

29. TikTok uses the cookies it collects and/or its "Advanced Matching" feature to "recognize and learn about people from [the] website and the types of actions they do or don't take." In April 2022, TikTok made its collection of first- and third-party cookies automatic across all websites that incorporated the TikTok Pixel prior to March 10, 2022.

**ANSWER:** Paragraph 29 contains allegations regarding a third party, TikTok, and purports to quote TikTok materials. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29 because they concern the conduct of a third party and Plaintiff's

interpretations thereof. Shoe Station states that the TikTok materials Plaintiff purports to quote speak for themselves. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 29.

30. Once the TikTok Pixel intercepts this data, it is sent to TikTok's server, where it is stored and processed. The data collected by TikTok is then used to match website actions to individuals, as well as provide attribution reports and track users. Further, if the user has a TikTok account, the data is used in connection with TikTok's advertising services.

**<u>ANSWER</u>:** Paragraph 30 contains allegations regarding the operation of software developed and offered by a third party, TikTok, and the conduct of TikTok in storing, processing, and using data. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30 because they concern the design and operation of third-party software, the conduct of a third party, and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 30.

31. Defendant installed the TikTok Pixel on the Website:



**ANSWER:** Shoe Station admits only that the TikTok Pixel has been incorporated on the Website. Shoe Station states that the image reproduced in Paragraph 31 of the Complaint speaks for itself, and Shoe Station denies that it is a complete or accurate depiction of the Website's functionality. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 31.

32. Through this technology, TikTok intercepted Defendant's Website users' communications. As a result, information Plaintiff intended to provide to Defendant was intercepted by TikTok.

**ANSWER:** Paragraph 32 contains allegations regarding the operation of software developed and offered by a third party, TikTok. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 because they concern the design and operation of third-party software, the conduct of a third party, and Plaintiff's interpretations thereof. Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's subjective intentions, including what information Plaintiff intended to provide to Shoe Station. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 32.

33. For example, if a Website visitor looks at Women's Nike Initiator Training Shoes, that information is captured immediately by TikTok:




**<u>ANSWER</u>:** Paragraph 33 presents a hypothetical Website visit by an unidentified visitor, does not purport to describe Plaintiff's own visit to the Website, and contains allegations regarding what information the software developed and offered by a third party, TikTok, captures. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33 because they concern the design and operation of third-party software and Plaintiff's interpretations thereof. Shoe Station states that the image reproduced in Paragraph 33 of the Complaint speaks for itself, and Shoe Station denies the characterizations Plaintiff insinuates are to be drawn from it. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 33.

34. Plaintiff did not consent to the interception of her data by TikTok. To the contrary, Plaintiff rejected the Website's use of the Code when Defendant presented her with the

option. TikTok's nonconsensual interception of Plaintiff's data resulted from Defendant's conduct, constitutes an invasion of privacy, breach of contract, and violates Pennsylvania law.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's subjective choices and knowledge while browsing the Website. Shoe Station further states that Paragraph 34 contains allegations regarding the conduct of a third party, TikTok. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34 because they concern the conduct of a third party and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 34.

**B. Website Users Have a Reasonable Expectation of Privacy in their Interactions with Defendant's Website**

35. Consumers are skeptical and wary about their data being collected. A report released by KPMG shows that "a full 86% of the respondents said they feel a growing concern about data privacy, while 78% expressed fears about the amount of data being collected."

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices and consumer attitudes. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 35.

36. Another recent paper also indicates that most website visitors will assume their detailed interactions with a website will only be used by the website hosts and not be shared with

a third-party they know nothing about. As such, website visitors reasonably expect that their interactions with a website should not be released to third parties unless explicitly stated.

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices and consumer attitudes. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 36.

37. Privacy polls and studies show that a majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' data.

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices and consumer attitudes. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 37.

38. A recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices and consumer attitudes. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient

to form a belief as to the truth of the allegations of Paragraph 38 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 38.

39. Moreover, according to a study by Pew Research Center, a significant majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices and consumer attitudes. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 39.

40. Users act consistently with their expectation of privacy. Following a new rollout of the iPhone operating software—which asks users for clear, affirmative consent before allowing companies to track users—85 percent of worldwide users and 94 percent of U.S. users chose not to allow such tracking.

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices and consumer attitudes. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 40.

41. Defendant's Website purports to provide users with the opportunity to decline the third-party tracking as described herein. When a Website visitor visits the Website, Defendant

displays a pop-up box telling users that the site uses cookies to “measure and improve our sites and services, to assist our marketing campaigns and to provide personalized content and advertising.” Further, Defendant’s Website tells visitors, “By clicking the button on the right, you can exercise your privacy rights:”




*Cookie notification pop-up on Defendant’s Website.*

**ANSWER:** Shoe Station admits only that the Website displays a cookie notification banner, which speaks for itself, and Shoe Station respectfully directs the Court to that material for the complete content and context thereof. Shoe Station denies the characterizations Plaintiff insinuates are to be drawn from the quoted language and denies that Plaintiff’s selective quotations, excerpts, and summaries are a full, complete, or accurate recitation of the Website’s disclosures. Shoe Station denies that the Website “purports” to permit visitors to decline all third-party tracking on the Website. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 41.

42. A user who clicks the button on the right, i.e., "Cookie Settings," is presented with a window entitled — in boldface type — "Do Not Sell or Share My Personal Data:"




*Window describing to Website users how they can disallow cookies from running on the Website.*

**<u>ANSWER</u>:** Shoe Station admits only that a Website visitor who selects "Cookie Settings" is presented with a window titled "Do Not Sell or Share My Personal Data," which speaks for itself, and Shoe Station respectfully directs the Court to that material for the complete content and context thereof. Shoe Station denies that Plaintiff's description and the image reproduced in Paragraph 42 are a full, complete, or accurate recitation of the Website's

disclosures. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 42.

43. The Website user can then select to "Manage Consent Preferences" by turning performance cookies and targeting cookies on or off.







*Window allowing Website users to toggle between allowing or disallowing performance cookies and/or targeting cookies.*

**ANSWER:** Shoe Station admits only that the window referenced in Paragraph 43 permits a Website visitor to "Manage Consent Preferences" by toggling certain categories of cookies,

including "Performance Cookies" and "Targeting Cookies," and further discloses that "Strictly Necessary Cookies" are "Always Active" and cannot be disabled. Shoe Station states that the window speaks for itself, and Shoe Station respectfully directs the Court to that material for the complete content and context thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 43.

44. Reasonable Website users understand Defendant's cookie notification pop-up and window to mean that their Website Communications will not be tracked by third parties if they click "Manage Consent Preferences" to reject certain categories of cookie tracking.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the subjective understanding of Website visitors. To the extent Paragraph 44 characterizes what is "reasonable," it states a legal conclusion to which no response is required. Shoe Station denies Plaintiff's characterizations of the choices available to Website users, including any insinuation that a selection available on the Website operated as an election to opt out of every form of data collection. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 44.

45. Users of Defendant's Website who choose to "Manage Consent Preferences" by disallowing cookies are telling Defendant, unequivocally, that they do not consent to cookie tracking. These users have a clear and objectively reasonable expectation that their data will not be collected, disclosed, used, or analyzed in any way—let alone by unknown third parties.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the subjective intentions and expectations of Website visitors. To the extent Paragraph 45 characterizes an expectation as "objectively reasonable," it states a legal conclusion to which no response is required. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 45.

46. However, Defendant does not respect its Website users' choices to opt out of the use and disclosure of their data. Instead, Defendant enabled FullStory and TikTok to continue to

collect, use, and analyze Website Communications even when users expressly told Defendant they did not consent to such tracking.

**ANSWER:** Shoe Station denies Plaintiff's characterizations of the choices available to Website users, including any insinuation that a selection available on the Website operated as an election to opt out of every form of data collection. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 46 and specifically denies the characterization that it enabled FullStory or TikTok for the purpose of contravening users' choices.

**C. Website User and Usage Data Have Immense Economic Value**

47. The "world's most valuable resource is no longer oil, but data."[7]

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices and consumer attitudes. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Shoe Station states that the publication referenced in the footnote to Paragraph 47 speaks for itself. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 47.

48. In 2022, Business News Daily reported that some businesses collect personal data (i.e., gender, web browser cookies, IP addresses, and device IDs), engagement data (i.e., how consumers interact with a business's website, applications, and emails), behavioral data (i.e., customers' purchase histories and product usage information), and attitudinal data (i.e., data on consumer satisfaction) from consumers.[8] This information is valuable to companies because they

---

[7] The world's most valuable resource is no longer oil, but data, THE ECONOMIST (May 6, 2017), at https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longer-oil-but-data.

[8] Max Freedman, How Businesses Are Collecting Data (And What They're Doing With It), BUSINESS NEWS DAILY (Aug. 25, 2022), https://www.businessnewsdaily.com/10625-businesses-collecting-data.html.

can use this data to improve customer experiences, refine their marketing strategies, capture data to sell it, and even to secure more sensitive consumer data.[9]

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices and business goals. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Shoe Station states that the publications referenced in the footnotes to Paragraph 48 speak for themselves. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 48.

49. In a consumer-driven world, the ability to capture and use customer data to shape products, solutions, and the buying experience is critically important to a business's success. Research shows that organizations who "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin."[10]

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices and business goals. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Shoe Station states that the publication referenced in the footnote to Paragraph 49 speaks for itself. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 49.

---

[9] *Id.*

[10] Brad Brown, et al, Capturing value from your customer data, MCKINSEY (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data.

50. In 2013, the Organization for Economic Cooperation and Development ("OECD") even published a paper entitled "Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value."[11] In this paper, the OECD measured prices demanded by companies concerning user data derived from "various online data warehouses."[12]

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized practices. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Shoe Station states that the publications referenced in the footnotes to Paragraph 50 speak for themselves. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 50.

51. OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [*i.e.*, $2] for a date of birth, USD 8 for a social security number (government ID number), USD 3 for a driver's license number and USD 35 for a military record. A combination of address, date of birth, social security number, credit record and military are estimated to cost USD 55."[13]

**ANSWER:** Shoe Station admits that Plaintiff purports to quote and/or summarize third parties' assessments of generalized data value. These are not factual allegations specific to Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 51 because they concern the conduct of unknown and unidentified parties and Plaintiff's and those third parties' interpretations thereof. Shoe Station

---

[11] Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value, OECD DIGIT. ECON. PAPERS, No. 220 (Apr. 2, 2013), https://www.oecd.org/content/dam/oecd/en/publications/reports/2013/04/exploring-the-economics-of-personal-data_g17a228d/5k486qtxldmq-en.pdf.

[12] *Id.* at 25.

[13] *Id.*

states that the publication referenced in the footnote to Paragraph 51 speaks for itself. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 51.

**D. Plaintiff's and Class Members' Experiences**

52. While in Pennsylvania, Plaintiff visited www.shoecarnival.com and certain of its subpages. Plaintiff chose to reject cookies when Defendant presented her with the option.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding when, where, or whether Plaintiff visited the Website, which subpages she visited, or which cookie preferences she selected. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 52.

53. While on the Website, Plaintiff browsed for various products sold by Defendant.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53.

54. Following Plaintiff's visit to the Website, she began receiving advertisements for Shoe Carnival on her Facebook account, highlighting items similar to the products Plaintiff browsed on the Website.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 54 regarding advertisements Plaintiff allegedly received on her Facebook account. Shoe Station specifically denies the insinuation that there was any causal relationship between Plaintiff's alleged visit to the Website and any content she subsequently saw on her Facebook account. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 54.

55. Upon information and belief, these advertisements were a result of the Code Vendors capturing her information during her Website visit.

**ANSWER:** Paragraph 55 contains allegations, made upon information and belief, regarding the conduct of third parties, the Code Vendors, and the source of advertisements Plaintiff allegedly received on a third-party platform. These are not factual allegations specific to

Shoe Station, and Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 55 because they concern the conduct of third parties and Plaintiff's interpretations thereof. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 55.

56. The wiretapping by the Code is ongoing during the visit and intercepts the contents of these communications between Plaintiff and Defendant with instantaneous transmissions to FullStory and TikTok.

**ANSWER:** Shoe Station states that the term "wiretapping" and whether the contents of any communication are "intercept[ed]" within the meaning of 18 Pa. Cons. Stat. § 5702 are legal conclusions to which no response is required. Plaintiff does not define or explain what it means for there to be "instantaneous transmissions" to FullStory and TikTok, and that phrase is vague and ambiguous such that Shoe Station cannot meaningfully admit or deny it. Shoe Station admits only that the Website has incorporated certain third-party software code, including code offered by FullStory and TikTok, that can be configured to help understand visitor behavior and optimize user experience. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 56.

57. Thus, when Plaintiff visited Defendant's Website, the contents of her communications with the Website were intercepted by the Code, and simultaneously transmitted to FullStory and TikTok.

**ANSWER:** Shoe Station states that whether the contents of any communication were "intercepted" within the meaning of 18 Pa. Cons. Stat. § 5702 is a legal conclusion to which no response is required. Shoe Station admits only that the Website has incorporated certain third-party software code, including code offered by FullStory and TikTok, that can be configured to help understand visitor behavior and optimize user experience. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 57.

58. The tracking Code described above each operate in the same manner for all putative Class Members.

**ANSWER:** Plaintiff does not define or explain what it means for code to "operate in the same manner" for all putative Class Members, and that phrase is vague and ambiguous such that Shoe Station cannot meaningfully admit or deny it. Shoe Station specifically denies that the operation of any code on the Website, or that data (if any) collected from any visitor, was uniform across putative Class Members, including because visitors' cookie preferences, browser settings, and use of the Website varied. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 58.

59. Like Plaintiff, each Class Member visited Defendant's Website with the Code embedded in it, and the Code intercepted the Class Members' Website Communications with the Website by sending hyper-frequent logs of those communications to FullStory and TikTok.

**ANSWER:** Shoe Station states that whether any communication was "intercepted" within the meaning of 18 Pa. Cons. Stat. § 5702 is a legal conclusion to which no response is required. Plaintiff does not define or explain what it means for code to send "hyper-frequent logs" of communications, and that phrase is vague and ambiguous such that Shoe Station cannot meaningfully admit or deny it. Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether, when, or how each putative Class Member visited the Website. Shoe Station admits only that the Website has incorporated certain third-party software code, including code offered by FullStory and TikTok, that can be configured to help understand visitor behavior and optimize user experience. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 59.

60. The Code procured by Defendant is an electronic, mechanical, or other analogous device in that the Code, monitors, collects, and records the content of electronic computer-to-computer communications between Plaintiff's mobile computer and/or mobile device and the

computer servers and hardware utilized by Defendant to operate its Website, subsequently interpreting that data to repurpose it for profits.

**ANSWER:** Paragraph 60 contains legal assertions, including whether any code on the Website is an "electronic, mechanical, or other device" within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is required. To the extent that a response is required, Shoe Station admits only that the Website has incorporated certain third-party software code, including code offered by FullStory and TikTok, that can be configured to help understand visitor behavior and optimize user experience. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 60.

61. Alternatively, even if the Code itself were not a device, the Code is a software designed to alter the operation of a Website visitor's computer or mobile phone by instructing the hardware components of that physical device to run the processes that ultimately intercept the visitor's communications and transmit them to FullStory and TikTok, without the visitor's knowledge.

**ANSWER:** Paragraph 61 contains legal assertions, including whether any code on the Website is an "electronic, mechanical, or other device" and whether any communication is "intercept[ed]," within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is required. To the extent that a response is required, Shoe Station admits only that the Website has incorporated certain third-party software code, including code offered by FullStory and TikTok, that can be configured to help understand visitor behavior and optimize user experience. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 61.

62. The data collected by the Code identified specific information input and content viewed and thus revealed personal and sensitive information about website visitors' internet activity and habits. As such, by the very nature of its operation, the Code is a device used to intercept electronic communications.

**ANSWER:** Paragraph 62 contains legal assertions, including whether any code on the Website is an "electronic, mechanical, or other device" used to "intercept" electronic communications within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is

required. To the extent that a response is required, Shoe Station admits only that the Website has incorporated certain third-party software code, including code offered by FullStory and TikTok, that can be configured to help understand visitor behavior and optimize user experience. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 62.

63. The Website Communications that Defendant solicited the Code Vendors to monitor, collect, and record was content generated through Plaintiff's and Class Members' use, interaction, and communication with Defendant's Website relating to the substance and/or meaning of Plaintiff's and Class Members' communications with the Website, i.e., information inputted by Plaintiff and Class Members, and pages and content clicked on and viewed by Plaintiff and Class Members. This information is "content" and is not merely record information regarding the characteristics of the message that is generated in the course of the communication, nor is it simply information disclosed in the referrer headers. The mere fact that Defendant values this content, and procures third parties to monitor, intercept and record it, confirms these communications are content that convey substance and meaning to Defendant, and, in turn, to FullStory and TikTok, who receive the intercepted information.

**ANSWER:** Paragraph 63 contains legal assertions, including whether any information at issue constitutes the "contents" of any communication and whether any information was "intercept[ed]," within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is required. To the extent that a response is required, Shoe Station denies the allegations of Paragraph 63.

64. Plaintiff reasonably expected that her visit to Defendant's Website would be private and that Defendant would not have procured multiple third-party vendors to track, record, and/or watch Plaintiff as she browsed, interacted with the Website, and searched for products or services.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's subjective expectations. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 64.

**E. Plaintiff and Class Members Did Not Consent to the Interception of their Electronic Communications**

65. Plaintiff and Class Members did not provide prior consent to Defendant's interception of their Website Communications, nor could they, as the interception begins immediately upon arriving at Defendant's Website.

**ANSWER:** Paragraph 65 contains legal conclusions, including whether any "interception" occurred within the meaning of 18 Pa. Cons. Stat. § 5702 and the legal effect of any consent, to which no response is required. Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the consent provided by Plaintiff or any individual putative class member. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 65.

66. Even worse, when Defendant asked Plaintiff and Class Members for consent, Defendant had no intention of disallowing the Code from running when Website visitors configured their preferences to disallow certain categories of cookies from operating on the Website.

**ANSWER:** Shoe Station denies the allegations of Paragraph 66.

67. When Plaintiff and Class Members chose to "Reject All" or configured their preferences to disallow certain categories of cookies, Defendant still allowed the Code Vendors to deploy the Code and capture Website Communications.

**ANSWER:** Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the cookie preferences Plaintiff or putative class members selected. Shoe Station denies Plaintiff's characterizations of the choices available to Website users, including any insinuation that a selection available on the Website operated as an election to prevent all software code from running on the Website. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 67.

## V. CLASS ACTION ALLEGATIONS

68. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

**ANSWER:** Paragraph 68 does not contain any factual allegations and does not require a response. To the extent that a response is required, Shoe Station admits only that Plaintiff purports to bring this action individually and on behalf of a putative class but specifically denies that any class can or should be certified. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 68.

69. Plaintiff proposes the following Class definition, subject to amendment as appropriate: All Pennsylvania citizens whose Website Communications were captured through the use of the Code embedded in www.shoecarnival.com.

**ANSWER:** Paragraph 69 does not contain any factual allegations and does not require a response. To the extent that a response is required, Shoe Station admits that Paragraph 69 includes Plaintiff's definition of a purported class she seeks to have certified but specifically denies that the purported class or any class can or should be certified. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 69.

70. Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

**ANSWER:** Paragraph 70 does not contain any factual allegations and does not require a response. To the extent that a response is required, Shoe Station admits only that Paragraph 70 describes exclusions from Plaintiff's proposed class definition. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 70.

71. Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery. The proposed Class meets the criteria for certification under the 231 Pa. Code Ch. 1700, et seq.

**ANSWER:** Paragraph 71 does not contain any factual allegations and does not require a response. To the extent that a response is required, Shoe Station admits that Plaintiff purports to reserve certain rights but denies that any class definition is appropriate. Shoe Station further states that, following removal, class certification in this action is governed by Federal Rule of Civil Procedure 23, not 231 Pa. Code Ch. 1700, and denies that the proposed class satisfies the requirements of either. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 71.

72. Numerosity: The members of the Class are so numerous that individual joinder of all Class Members is impracticable. The precise number of Class Members and their identities may be obtained from the books and records of Defendant and/or the Code Vendors.

**ANSWER:** Shoe Station denies the allegations of Paragraph 72.

73. Commonality: This action involves questions of law and fact that are common to the Class Members. Such common questions include, but are not limited to:

a. whether Defendant procures the Code Vendors and other third parties to intercept Defendant's Website visitors' Website Communications;

b. whether Defendant intentionally discloses the intercepted Website Communications of its Website users;

c. whether Defendant acquires the contents of Website users' Website Communications without their consent;

d. whether Defendant's conduct violates Pennsylvania Wiretap Act, 18 Pa. Cons. Stat. § 5701, et seq.;

e. whether Defendant's conduct is a breach of contract;

f. whether Plaintiff and Class Members are entitled to equitable relief; and

g. whether Plaintiff and the Class Members are entitled to actual, statutory, punitive, or other forms of damages, and other monetary relief.

**ANSWER:** Shoe Station denies the allegations of Paragraph 73, including each of its subparts (a) through (g).

74. Typicality: Plaintiff's claims are typical of the other Class Members' claims because, among other things, all Class Members were comparably injured through the uniform prohibited conduct described above. For instance, Plaintiff and each member of the Class had their communications intercepted in violation of the law and their right to privacy. This uniform injury and the legal theories that underpin recovery make the claims of Plaintiff and the members of the Class typical of one another.

**ANSWER:** Shoe Station denies the allegations of Paragraph 74.

75. Adequacy of Representation: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including litigation to remedy privacy violations. Plaintiff has no interest that is antagonistic to the interests of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the interests of the other members of the Class.

**ANSWER:** Shoe Station denies the allegations of Paragraph 75.

76. Predominance. Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business

practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages are common to Plaintiff and each member of the Class. If Defendant intercepted Plaintiff's and Class Members' Website Communications, then Plaintiff and each Class Member suffered damages by that conduct.

**ANSWER:** Shoe Station denies the allegations of Paragraph 76.

77. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

**ANSWER:** Shoe Station denies the allegations of Paragraph 77.

78. Litigation Already Commenced — Pennsylvania Rule of Civil Procedure 1708(a)(4): To Plaintiff's knowledge, there is no other pending case where Defendant's customers seek to represent a class of individuals impacted based on the conduct alleged in this Complaint.

**ANSWER:** Paragraph 78 contains legal assertions regarding Pennsylvania Rule of Civil Procedure 1708(a)(4), which does not govern this removed action, to which no response is required. To the extent that a response is required, Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's knowledge. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 78.

79. Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

**ANSWER:** Shoe Station denies the allegations of Paragraph 79.

80. Members of the Class are ascertainable. Class Membership is defined using objective criteria, and Class Members may be readily identified through the books and records of Defendant and/or the Code Vendors.

**ANSWER:** Shoe Station denies the allegations of Paragraph 80.

## VI. CAUSES OF ACTION

### COUNT I — Violation of Pennsylvania Wiretap Act, 18 Pa. Cons. Stat. § 5701, et seq.

81. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:** Paragraph 81 does not contain any factual allegations and does not require a response. To the extent that a response is required, Shoe Station incorporates by reference, as if fully set forth herein, its responses to the allegations of Paragraphs 1 through 80 of the Complaint.

82. Plaintiff brings this claim individually and on behalf of the Class.

**ANSWER:** Paragraph 82 does not contain any factual allegations and does not require a response. To the extent that a response is required, Shoe Station admits only that Plaintiff purports to bring Count I individually and on behalf of a putative class but specifically denies that any class can or should be certified. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 82.

83. The Pennsylvania Wiretap Act (the "Act") prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. § 5703.

**ANSWER:** Paragraph 83 contains legal assertions to which no response is required. To the extent that a response is required, Shoe Station admits only that Plaintiff purports to excerpt and summarize portions of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, et seq. ("WESCA") but denies that Plaintiff's excerpt and summary are a complete or accurate recitation of the law. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 83.

84. Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(a).

**ANSWER:** Paragraph 84 contains legal assertions to which no response is required. To the extent that a response is required, Shoe Station admits only that Plaintiff purports to excerpt and summarize portions of WESCA but denies that Plaintiff's excerpt and summary are a complete or accurate recitation of the law. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 84.

85. "Intercept" is defined as any "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Cons. Stat. § 5702.

**ANSWER:** Paragraph 85 contains legal assertions to which no response is required. To the extent that a response is required, Shoe Station admits only that Plaintiff purports to excerpt and summarize portions of WESCA but denies that Plaintiff's excerpt and summary are a complete or accurate recitation of the law. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 85.

86. "Contents" is defined as "used with respect to any wire, electronic or oral communication, is any information concerning the substance, purport, or meaning of that communication." 18 Pa. Cons. Stat. § 5702.

**ANSWER:** Paragraph 86 contains legal assertions to which no response is required. To the extent that a response is required, Shoe Station admits only that Plaintiff purports to excerpt and summarize portions of WESCA but denies that Plaintiff's excerpt and summary are a complete or accurate recitation of the law. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 86.

87. "Person" is defined as "any individual, partnership, association, joint stock company, trust or corporation." 18 Pa. Cons. Stat. § 5702.

**ANSWER:** Paragraph 87 contains legal assertions to which no response is required. To the extent that a response is required, Shoe Station admits only that Plaintiff purports to excerpt and summarize portions of WESCA but denies that Plaintiff's excerpt and summary are a complete or accurate recitation of the law. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 87.

88. "Electronic Communication" is defined as "[a]ny transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." 18 Pa. Cons. Stat. § 5702.

**ANSWER:** Paragraph 88 contains legal assertions to which no response is required. To the extent that a response is required, Shoe Station admits only that Plaintiff purports to excerpt and summarize portions of WESCA but denies that Plaintiff's excerpt and summary are a complete or accurate recitation of the law. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 88.

89. Defendant is a person for purposes of the Act because it is a corporation.

**ANSWER:** Paragraph 89 contains legal assertions to which no response is required. To the extent that a response is required, Shoe Station admits that it is a corporation and that 18 Pa. Cons. Stat. § 5702 defines "person" to include a corporation. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 89.

90. The Code procured by Defendant is a "device" used for the "acquisition of the contents of any wire, electronic, or oral communication" within the meaning of the Act.

**ANSWER:** Paragraph 90 contains legal assertions, including whether any code on the Website is a "device" used for the "acquisition of the contents" of any communication within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is required. To the extent that a response is required, Shoe Station denies the allegations of Paragraph 90.

91. Plaintiff's and Class Members' intercepted Website Communications constitute the "contents" of "electronic communication[s]" within the meaning of the Act.

**ANSWER:** Paragraph 91 contains legal assertions, including whether any Website Communications constitute the "contents" of "electronic communication[s]" within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is required. To the extent that a response is required, Shoe Station denies the allegations of Paragraph 91.

92. Defendant intentionally procures and embeds the Code on its Website to spy on, automatically and secretly, and intercepts its Website visitors' electronic interactions communications with Defendant in real time.

**ANSWER:** Paragraph 92 contains legal assertions, including whether Shoe Station or any code on the Website "intercepts" communications within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is required. To the extent that a response is required, Shoe Station denies the allegations of Paragraph 92.

93. Plaintiff's and Class Members' electronic communications are intercepted contemporaneously with their transmission.

**ANSWER:** Paragraph 93 contains legal assertions, including whether any electronic communications are "intercepted" within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is required. To the extent that a response is required, Shoe Station denies the allegations of Paragraph 93.

94. Plaintiff and Class Members did not consent to having their Website Communications wiretapped.

**ANSWER:** Shoe Station states that the term "wiretapped" is a legal conclusion to which no response is required. To the extent that a response is required, Shoe Station lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the consent provided by Plaintiff or any individual putative class member. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 94.

95. Pursuant to 18 Pa. Cons. Stat. § 5725(a), Plaintiff and the Class Members seek (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.

**ANSWER:** Shoe Station admits only that Plaintiff seeks relief but specifically denies that Plaintiff or any putative class member is entitled to any relief or damages. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 95.

96. Defendant's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiff and Class Members any time they visit Defendant's Website with the Code enabled without their consent. Plaintiff and Class Members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

**ANSWER:** Paragraph 96 contains legal conclusions, including whether Shoe Station or any code on the Website "unlawfully intercept[s]" communications within the meaning of 18 Pa. Cons. Stat. § 5702, to which no response is required. Except as specifically stated otherwise, Shoe Station denies the allegations of Paragraph 96 and specifically denies that Plaintiff or any putative class member is entitled to declaratory, injunctive, or any other relief.

**COUNT II — Invasion of Privacy – Intrusion Upon Seclusion**

97. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:** Paragraph 97 does not contain any factual allegations and does not require a response. The Court dismissed Plaintiff's Count II pursuant to its Memorandum dated September 17, 2026. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station incorporates by reference its responses to Paragraphs 1 through 96 as if fully set forth herein.

98. Pennsylvania common law recognizes the tort of invasion of privacy. The right to privacy is also embodied in multiple sections of the Pennsylvania constitution.

**ANSWER:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

99. Plaintiff brings this claim individually and on behalf of the Class.

**ANSWER:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

100. Plaintiff and Class Members have an objective, reasonable expectation of privacy in their Website Communications.

**ANSWER:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

101. Plaintiff and Class Members did not consent to, authorize, or know about Defendant's intrusion at the time it occurred. Plaintiff and Class Members never agreed that Defendant could collect or disclose their Website Communications.

**ANSWER:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

102. Plaintiff and Class Members had an objective interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

**ANSWER:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

103. Defendant intentionally intrudes on Plaintiff's and Class Members' private life, seclusion, or solitude, without consent.

**<u>ANSWER</u>:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

104. Defendant's conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

**<u>ANSWER</u>:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

105. Plaintiff and Class Members were harmed by Defendant's wrongful conduct as Defendant's conduct has caused Plaintiff and the Class mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications.

**<u>ANSWER</u>:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

106. Defendant's conduct has needlessly harmed Plaintiff and the Class by capturing intimately personal facts and data in the form of their Website Communications. This disclosure and loss of privacy and confidentiality have caused Plaintiff and the Class to experience mental anguish, emotional distress, worry, fear, and other harms.

**<u>ANSWER</u>:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

107. Additionally, given the monetary value of individual personal information, Defendant deprived Plaintiff and Class Members of the economic value of their interactions with

Defendant's Website, without providing proper consideration for Plaintiff's and Class Members' property.

**<u>ANSWER</u>:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

108. Further, Defendant has improperly profited from its invasion of Plaintiff's and Class Members' privacy in its use of their data for its economic value.

**<u>ANSWER</u>:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

109. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages in an amount to be proven at trial.

**<u>ANSWER</u>:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

110. Defendant's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiff and Class Members any time they visit Defendant's Website with the Code enabled without their consent. Plaintiff and Class Members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

**<u>ANSWER</u>:** The Court dismissed Plaintiff's Count II and therefore a response is not required. *See Sanders*, ECF No. 27, at 12-13. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count II.

**COUNT III — Breach of Contract**

111. Plaintiff re-alleges and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

**<u>ANSWER</u>:** Paragraph 111 does not contain any factual allegations and does not require a response. The Court dismissed Plaintiff's Count III pursuant to its Memorandum dated

September 17, 2026. *See Sanders*, ECF No. 27, at 13-14. To the extent that a response is required, Shoe Station incorporates by reference its responses to Paragraphs 1 through 110 as if fully set forth herein.

112. Defendant's representations to Plaintiff and Class Members regarding its use of cookies and tracking technology, including the representations in its cookie notice, constitute a contract. By configuring their consent preferences to reject certain categories of cookies, Plaintiff and the Class Members indicated their acceptance of Defendant's express offer not to employ cookie and tracking technologies while they navigated Defendant's website. In consideration for Defendant's promise, Plaintiff and the Class Members continued to use Defendant's website and products, in reliance on the representations Defendant made.

**ANSWER:** The Court dismissed Plaintiff's Count III and therefore a response is not required. *See Sanders*, ECF No. 27, at 13-14. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count III.

113. Plaintiff and Class Members would not have used Defendant's Website in the absence of the contract binding them and Defendant. Defendant's promised safeguarding of Plaintiff's and Class Members' Website Communications was critical to realize the intent of the parties.

**ANSWER:** The Court dismissed Plaintiff's Count III and therefore a response is not required. *See Sanders*, ECF No. 27, at 13-14. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count III.

114. As detailed above, Defendant breached its contracts with Plaintiff and Class Members by disclosing their information to third parties in direct contravention of the cookie notice.

**ANSWER:** The Court dismissed Plaintiff's Count III and therefore a response is not required. *See Sanders*, ECF No. 27, at 13-14. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count III.

115. As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class Members sustained actual losses and damages as described in detail above.

**ANSWER:** The Court dismissed Plaintiff's Count III and therefore a response is not required. *See Sanders*, ECF No. 27, at 13-14. To the extent that a response is required, Shoe Station denies each and every allegation in Plaintiff's Count III.

**REQUEST FOR RELIEF**

Plaintiff, individually and on behalf of the other members of the proposed Class, respectfully requests that the Court enter judgment in Plaintiff's and Class Members' favor and against Defendant as follows:

A. Certifying the Class and appointing Plaintiff as the representative of the Class;

B. Appointing Plaintiff's counsel as class counsel;

C. Declaring that Defendant's past conduct was unlawful, as alleged herein;

D. Declaring Defendant's ongoing conduct is unlawful, as alleged herein;

E. Enjoining Defendant from continuing the unlawful practices described herein, and awarding such injunctive and other equitable relief as the Court deems just and proper;

F. Awarding Plaintiff and Class Members statutory, actual, compensatory, consequential, punitive, and nominal damages in an amount in excess of the arbitration limits, as well as restitution and/or disgorgement of profits unlawfully obtained;

G. Awarding Plaintiff and Class Members pre-judgment and post-judgment interest;

H. Awarding Plaintiff and Class Members reasonable attorneys' fees, costs, and expenses; and

I. Granting such other relief as the Court deems just and proper.

**ANSWER:** This section consists of requests for relief to which no responsive pleading is required. To the extent any facts are averred, they are denied. Shoe Station denies that Plaintiff or any putative class member is entitled to any relief whatsoever, whether legal or equitable, including but not limited to class certification, appointment of class counsel, declaratory judgment, injunctive relief, statutory, actual, compensatory, consequential, punitive, or nominal

damages, restitution, disgorgement, pre-judgment or post-judgment interest, attorneys' fees, costs, or expenses.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, demand a trial by jury of any and all issues in this action so triable of right.

**ANSWER:** This paragraph consists of Plaintiff's demand for a jury trial to which no responsive pleading is required.

## ADDITIONAL DEFENSES

Pursuant in part to Federal Rule of Civil Procedure 8(c), and without assuming any burdens of proof or persuasion that would otherwise rest on Plaintiff, Shoe Station asserts the following defenses. Shoe Station reserves all rights to assert additional or amended defenses as discovery proceeds and additional facts become known.

### FIRST DEFENSE

### (Failure to State a Claim)

1. The Complaint, and each purported cause of action therein, fails to state a claim upon which relief can be granted under the statutes of Pennsylvania, the laws of the United States, or any common law legal or equitable theory.

### SECOND DEFENSE

### (Class Certification Failure)

2. Plaintiff's claims and those of the putative class are barred because this case is not maintainable as a class action under Federal Rule of Civil Procedure 23 because the proposed class does not satisfy the requirements described therein, including, but not limited to, class definition, ascertainability, numerosity, commonality, typicality, predominance, adequacy of representation, superiority, and manageability. Among other things, whether any individual

visitor rejected any category of cookies, which cookie preferences each visitor selected, what data (if any) was collected from each visitor, and whether each visitor consented are individualized questions that predominate over any common questions.

**THIRD DEFENSE**

**(Inadequate Class Representative)**

3. The named Plaintiff is not an adequate class representative under Rule 23(a)(4). Plaintiff may have interests antagonistic to those of putative class members, may be subject to unique defenses inapplicable to the class (including individual consent, the specific cookie preferences she selected, atypical browsing patterns, and prior knowledge of the Website's use of third-party tools), and may lack sufficient knowledge of and interest in this litigation to adequately protect the interests of absent class members.

**FOURTH DEFENSE**

**(Consent/Waiver)**

4. Plaintiff's claims and those of the putative class are barred, in whole or in part, because Plaintiff and putative class members consented to, and/or waived any claims arising from, the data collection practices at issue through their voluntary use of the Website after notice of its cookie notification banner, cookie preference window, and related disclosures. The Website disclosed that it uses cookies to measure and improve its sites and services, to assist its marketing campaigns and to provide personalized content and advertising, and disclosed that certain categories of cookies, including "Strictly Necessary Cookies," are "Always Active" and cannot be disabled. Plaintiff and putative class members agreed to these terms by: (a) using the Website after notice of the cookie banner and related disclosures; (b) accepting, or declining to reject, categories of cookies through the cookie preference window; and (c) configuring and

maintaining browser settings that accept cookies. Plaintiff and putative class members knew or should have known of the practices at issue, and such consent, whether actual or implied, bars Plaintiff's claim under WESCA.

**FIFTH DEFENSE**

**(Laches, Acquiescence, and Estoppel)**

5. Plaintiff's requests for equitable relief, including declaratory and injunctive relief, are barred, in whole or in part, by the doctrines of laches, acquiescence, and equitable estoppel. The use of standard website analytics and advertising technologies has been publicly known, widely reported, and publicly disclosed for years, including in the Website's own cookie disclosures. Plaintiff unreasonably delayed in asserting her claims despite the longstanding availability of the information underlying her allegations, and Shoe Station has been prejudiced by that delay through its continued reliance on, and substantial investment in, its established data practices.

**SIXTH DEFENSE**

**(Good Faith Compliance)**

6. Plaintiff's claims and those of the putative class for damages are barred, in whole or in part, because Shoe Station, at all times, acted in good faith and in compliance with applicable statutes and/or regulations. Shoe Station provided Website visitors with a cookie notification banner and a cookie preference mechanism, disclosed the categories of cookies used on the Website, and has operated at all relevant times in the good-faith belief that its practices comply with applicable legal requirements.

**SEVENTH DEFENSE**

**(Superseding/Intervening Causes)**

7. To the extent Plaintiff or the putative class suffered any harm (which Shoe Station denies), such harm was caused by superseding and/or intervening causes independent of and unforeseeable by Shoe Station, including but not limited to: (a) the independent actions of third parties in collecting, storing, processing, or using data through their own software and servers; (b) Plaintiff's own decisions regarding browser configuration, privacy settings, cookie preferences, and website usage; (c) the actions of other advertising technology companies, including the operators of social media platforms on which Plaintiff alleges she received advertisements, operating independently of Shoe Station; and (d) Plaintiff's failure to avail herself of readily available privacy tools and opt-out mechanisms. These independent causes break any causal chain between Shoe Station's conduct and Plaintiff's alleged injuries.

**EIGHTH DEFENSE**

**(No Proximate Cause)**

8. Even assuming *arguendo* that Shoe Station engaged in the conduct alleged (which Shoe Station denies), Plaintiff cannot establish that any alleged injury was proximately caused by Shoe Station's actions. Any harm Plaintiff claims, including alleged loss of the economic value of her data or invasion of privacy, is too remote, speculative, and attenuated from Shoe Station's actual practices to satisfy the proximate cause requirement of her claim.

**NINTH DEFENSE**

**(Assumption of Risk)**

9. Plaintiff assumed the risk of the data collection practices at issue by voluntarily using the internet through standard web browsers configured to accept cookies, visiting a

commercial website with a posted cookie notice disclosing the use of cookies for analytics and advertising, and failing to employ readily available privacy tools (including ad-blockers, VPNs, private browsing modes, Do Not Track settings, and cookie management extensions). By knowingly engaging in online activity through standard channels that are widely understood to involve analytics and advertising technologies, Plaintiff voluntarily encountered and assumed a known risk inherent in the use of commercial websites.

**TENTH DEFENSE**

**(Failure to Mitigate)**

10. Plaintiff's claims and those of the putative class are barred or must be reduced by their failure to mitigate damages, as Plaintiff and/or the putative class continued to use the Website with knowledge of, or when they should have had knowledge of, the widespread use of common third-party website analytics tools and data collection practices that are a well-known feature of internet commerce. Readily available mitigation measures include but are not limited to: (a) configuring browser privacy settings to reject third-party cookies; (b) installing and using ad-blocking software; (c) employing VPN services; (d) using private or incognito browsing modes; (e) exercising the Website's cookie preference mechanism; (f) enabling Do Not Track or Global Privacy Control signals; and (g) using alternative browsers with enhanced privacy protections. Plaintiff's failure to employ any of these widely available, easily accessible, and often free measures constitutes a failure to mitigate damages that limits or eliminates any recovery.

**ELEVENTH DEFENSE**

**(No Standing for Injunctive Relief)**

11. To the extent Plaintiff or the putative class seek injunctive, declaratory, or other prospective equitable relief, they lack standing to obtain such relief because Shoe Station did not act or refuse to act on grounds that apply generally and because Plaintiff and/or the putative class have not suffered irreparable harm and cannot demonstrate a real and immediate threat of future injury, particularly where Plaintiff can avoid any alleged future harm by declining to visit the Website.

**TWELFTH DEFENSE**

**(Statute of Limitations)**

12. Plaintiff's claims and those of the putative class are barred, in whole or in part, because they are time-barred by the applicable statute of limitations.

**THIRTEENTH DEFENSE**

**(No Contemporaneous Interception)**

13. Plaintiff's claims and those of the putative class under WESCA are barred, in whole or in part, because Shoe Station did not "intercept," or procure any other person to "intercept," any communications within the meaning of 18 Pa. Cons. Stat. §§ 5702 and 5703. Third-party analytics and advertising code on the Website does not acquire communications in transit. Rather, such code causes the user's browser to initiate a separate, independent request to the third party's server, a new communication that occurs after the primary webpage content has been requested or received. This separate request is not an "interception" of the user's communication with the Website but rather a distinct communication initiated by the browser's execution of standard code.

**FOURTEENTH DEFENSE**

**(No "Contents" Intercepted)**

14. Plaintiff's claim under WESCA requires proof that the "contents" of a communication were intercepted. 18 Pa. Cons. Stat. § 5702 defines "contents" as "any information concerning the substance, purport, or meaning of that communication." The data allegedly acquired through third-party code on the Website, including page views, URLs, clicks, mouse movements, IP addresses, browser and device information, and similar navigational data generated while browsing products on a public retail website, constitutes, at most, record information and addressing, routing, and signaling information. It does not constitute the "substance, purport, or meaning" of any communication between Plaintiff and the Website.

**FIFTEENTH DEFENSE**

**(Statutory Consent Exception)**

15. Plaintiff's claims and those of the putative class under WESCA are barred, in whole or in part, under the consent exception of 18 Pa. Cons. Stat. § 5704(4) because all parties to the communications at issue, including Plaintiff and putative class members, gave prior consent, whether actual or implied, to any alleged interception, including through notice of the Website's cookie disclosures and the "Always Active" categories of cookies that cannot be disabled.

**SIXTEENTH DEFENSE**

**(No Cognizable Damages)**

16. Plaintiff has not suffered and cannot demonstrate any cognizable damages proximately caused by Shoe Station's alleged conduct. Plaintiff has identified no out-of-pocket financial loss, no denial of credit, insurance, or employment, no identity theft, no misuse of data,

and no concrete downstream consequence of the practices alleged. Any claimed damages are speculative, unquantifiable, and insufficiently connected to Shoe Station's conduct to sustain recovery.

**SEVENTEENTH DEFENSE**

**(First Amendment)**

17. The application of WESCA to restrict or impose liability on Shoe Station's collection, use, and dissemination of lawfully obtained information implicates the protections of the First Amendment to the United States Constitution. The Supreme Court has recognized that "the creation and dissemination of information are speech within the meaning of the First Amendment" and that restrictions on the use of data constitute content-based speech restrictions subject to heightened scrutiny. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570-571 (2011). To the extent Plaintiff's claim seeks to impose liability on Shoe Station for engaging in otherwise lawful information-gathering and data-processing activities that are protected by the First Amendment, that claim is barred by the First Amendment as applied.

**EIGHTEENTH DEFENSE**

**(Dormant Commerce Clause)**

18. Plaintiff's claims and those of the putative class are barred, in whole or in part, by the dormant Commerce Clause of the United States Constitution. As interpreted by Plaintiff, WESCA would unconstitutionally burden interstate commerce and have the practical effect of impermissibly regulating conduct occurring wholly outside the borders of Pennsylvania, including the operation of a nationally accessible website by a company incorporated in Indiana and headquartered in South Carolina.

**NINETEENTH DEFENSE**

**(Due Process — Excessive Damages)**

19. Plaintiff's claims and those of the putative class are barred, in whole or in part, by the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution because the aggregate liquidated, statutory, and punitive damages sought under 18 Pa. Cons. Stat. § 5725(a) are so grossly excessive and disproportionate to any actual harm as to violate Shoe Station's due process rights.

**TWENTIETH DEFENSE**

**(Eighth Amendment — Excessive Fines)**

20. Plaintiff's claims and those of the putative class are barred, in whole or in part, by the Eighth Amendment to the United States Constitution. The aggregate liquidated damages sought, when multiplied across the alleged putative class, function as quasi-criminal fines grossly disproportionate to any actual harm and are excessive in violation of the Excessive Fines Clause.

**TWENTY-FIRST DEFENSE**

**(Justification)**

21. Plaintiff's claims and those of the putative class are barred, in whole or in part, because, to the extent Shoe Station engaged in any of the conduct alleged (which Shoe Station denies), Shoe Station was justified in doing so. Shoe Station's conduct furthered substantial countervailing interests, including measuring and improving the Website's functionality and services and delivering relevant content and advertising, and any alleged intrusion into Plaintiff's privacy is outweighed by the value conferred upon Plaintiff and putative class members through those services.

**TWENTY-SECOND DEFENSE**

**(Unclean Hands)**

22. Plaintiff's requests for equitable relief are barred, in whole or in part, by the doctrine of unclean hands. Plaintiff voluntarily used the Website and derived benefit from it while failing to employ readily available privacy tools, and her own inequitable conduct precludes equitable relief.

**TWENTY-THIRD DEFENSE**

**(Adequate Remedy at Law)**

23. Plaintiff's requests for equitable relief, including injunctive and declaratory relief, fail because Plaintiff has an adequate remedy at law.

**TWENTY-FOURTH DEFENSE**

**(Barred by Contract)**

24. Plaintiff's claims and those of the putative class are barred, in whole or in part, by any terms of use or other agreements governing use of the Website, which may contain limitation-of-liability provisions, dispute resolution or arbitration provisions, class action waivers, or other contractual terms that independently preclude or limit the claims and remedies Plaintiff or putative class members seek.

**TWENTY-FIFTH DEFENSE**

**(No Requisite Intent)**

25. Plaintiff's claims and those of the putative class are barred, in whole or in part, because WESCA requires proof of intentional conduct, and Plaintiff cannot establish that Shoe Station acted with the requisite intent.

* * *

Shoe Station specifically reserves all additional or affirmative defenses that it may have against each putative class member that may arise and which are not identified above under the Federal Rules of Civil Procedure, the laws of Pennsylvania, or any other defenses, at law or equity, that may arise when further information is obtained through investigation and discovery. At this time, it is not possible for Shoe Station to delineate all such defenses against the putative class members or the class members against whom such defenses may apply because no putative class members have been identified, no class has been certified (if any can be, which Shoe Station denies), and the putative class members are not parties to the litigation.

## DEMAND FOR JURY TRIAL

Shoe Station hereby demands trial by jury composed of the maximum number of jurors allowed by law as to all issues of contested fact.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered, Defendant Shoe Station respectfully prays for judgment as follows:

1. That Plaintiff's Class Action Complaint be dismissed with prejudice and judgment entered in favor of Shoe Station;
2. That Plaintiff and any member of the putative class take nothing by way of this Class Action Complaint;
3. That Shoe Station be awarded its costs and fees incurred herein; and
4. That Shoe Station be awarded such other and further relief as this Court deems just and proper.

Date: October 22, 2026

*/s/ Michelle A. Paninopoulos*

Michelle A. Paninopoulos (Pa. ID No. 329738)
Justin O. Kay (*pro hac vice* forthcoming)
Paul A. Rosenthal (*pro hac vice* forthcoming)
Rachel A. Beck (*pro hac vice* forthcoming)
Krista N. Hartrum (*pro hac vice* forthcoming)
**FAEGRE DRINKER BIDDLE & REATH LLP**
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
(215) 988-2700
michelle.paninopoulos@faegredrinker.com

*Attorneys for Defendant Shoe Station Group, Inc., formerly known as Shoe Carnival, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2026, I caused a true and correct copy of the foregoing Defendant Shoe Station Group, Inc.'s Answer and Defenses to Plaintiff's Class Action Complaint to be served on all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Michelle A. Paninopoulos
Michelle A. Paninopoulos